TEXAS COURT OF APPEALS, THIRD DISTRICT, AT AUSTIN







NO. 03-01-00718-CR







Rodney Samaniego, Appellant



v.



The State of Texas, Appellee







FROM THE DISTRICT COURT OF TOM GREEN COUNTY, 119TH JUDICIAL DISTRICT

NO. B-00-0998-S, HONORABLE RAE LEIFESTE, JUDGE PRESIDING






 Appellant Rodney Samaniego was convicted by a jury of the offense of delivery of
a controlled substance, namely, cocaine, in the amount of one gram or more, but less than four
grams. See Tex. Health & Safety Code Ann. § 481.112(c) (West Supp. 2002). The jury found
appellant guilty and found that he had been convicted of three prior felonies as alleged in the
indictment. They assessed his punishment at forty-three years' imprisonment. See Tex. Pen. Code
Ann. § 12.42(d) (West Supp. 2002). In two points of error, appellant contends that the evidence was
insufficient to convict him and the trial court erred in overruling his objection to the introduction of
the cocaine. We will affirm the trial court's judgment.


BACKGROUND


 On May 30, 2000, during an undercover crack cocaine investigation, a confidential
informant contacted appellant regarding a "friend" of his who wanted to purchase crack cocaine. 
The informant brought his "friend," undercover officer Vic Wilson, to the Inn of the Conchos Motel
in San Angelo as instructed by appellant. At the motel, appellant sold a quantity of cocaine to
Wilson. At the trial, the informant testified that he did not see the actual exchange take place. 
Furthermore, the evidence demonstrated that although the audio of this sales transaction was
recorded, the recorder malfunctioned; however, Officer Wilson testified that the officer at the police
station was able to listen to the participants in the transaction as it transpired. The informant testified
that immediately after completing the transaction, he and Officer Wilson left the motel. Officer
Wilson testified that he placed the cocaine in a Ziplock bag and marked the evidence, and he and the
informant testified that they immediately delivered the cocaine to Officer Doug Moore, the evidence
officer for the drug task force. Officer Wilson further testified that the same evidence presented to
him at trial was the evidence he delivered to Officer Moore.

 At trial, Officer Moore testified that he prepared an envelope on May 30 in which he
placed the Ziplock bag containing the cocaine in order to send it to the Department of Public Safety
laboratory in Abilene. Furthermore, he identified the envelope presented to him at trial as the
envelope he had prepared and sent to the lab. And he identified the evidence presented to him at trial
as the evidence he received from Officer Wilson and placed in the envelope for delivery to the DPS
lab.

 Shanna Lee Hampton, a chemist employed at the DPS lab, testified as one of the
records custodians for the crime lab. She testified that she reviewed the lab report identified by the
number assigned to appellant's case, she identified the chemist (J.R. Burch, currently retired) who
conducted the tests on the evidence submitted, she identified and explained the integrity and process
of the tests used, and she then reported that the test results concluded that the substance submitted
by Officer Moore was cocaine in an amount of 2.8 grams.


DISCUSSION


 In his first point of error, appellant contends that the evidence was insufficient to
convict him because the undercover officer's testimony was uncorroborated. (1) An offer-to-sell theory
requires proof of corroboration. See Tex. Health & Safety Code Ann. § 481.183(a) (West 1992). 
Appellant, however, was not charged or convicted of offering to sell a controlled substance. Rather,
he was charged and convicted as a party to actual delivery. Paragraph One of the indictment
provides in part: 


. . . [Appellant] . . . did then and there intentionally and knowingly deliver a
controlled substance, to wit: COCAINE, in an amount, by aggregate weight,
including any adulterants and dilutants, of ONE (1) GRAM OR MORE BUT LESS
THAN FOUR (4) GRAMS, by then and there actually transferring said controlled
substance to VERN WILSON. 



(Emphasis added.) Furthermore, in the charge of the court, the trial court, after indicating that
appellant had been "charged by indictment with the offense of delivery of a controlled substance,"
then defined the term "delivery" as follows:


"Delivery" means the actual transfer from one person to another of a controlled
substance, whether or not there is an agency relationship. 



(Emphasis added.) The jury found the appellant guilty of delivery of a controlled substance. Because
appellant was convicted as a party to actual delivery, the State was not required to produce
corroborating evidence. See Cano v. State, 3 S.W.3d 99, 107 (Tex. App--Corpus Christi 1999, writ
ref'd); Howery v. State, 528 S.W.2d 230, 233 (Tex. Crim. App. 1975). We overrule appellant's first
point of error.

 In his second point of error, appellant contends that the trial court abused its discretion
in overruling his objection to the introduction of the controlled substance because there was a break
in the chain of custody. He also claims that the substance had been tampered with between the time
it was seized and the trial on the merits.

 At trial, Officer Wilson identified the drug exhibit offered into evidence as the "15
rocks of crack" cocaine that he purchased from appellant on May 30, 2000. He testified that he
placed the "rocks" in a Ziplock bag, which he marked with his initials, his badge number, and the
date. He further testified that the evidence remained in his possession until he took the evidence to
a prearranged meeting place and transferred it to Officer Moore.

 Officer Moore testified that he prepared an envelope to "maintain the integrity of the
evidence" because it was going to be sent to the DPS lab in Abilene. At trial, Officer Moore
identified the envelope as "stamped with my name, my label," and he also identified his handwriting
on the envelope. Furthermore, Officer Moore identified the Ziplock bag containing the crack cocaine
that he placed in the envelope by referencing the case number 10648, his initials, and the date he had
marked on the bag. He then testified he retained the evidence in his exclusive possession until he
mailed it to the DPS lab on June 1, 2000. Although Officer Moore testified he sent the envelope via
certified mail, he did not have the receipts with him at trial.

 Ms. Hampton, the chemist employed at the DPS lab, testified as one of the records
custodians for the crime lab. She testified that she reviewed the lab report identified as case number
10648. She also testified that the case number assigned by the lab for testing the evidence submitted
in case number 10648 also appeared on the envelope prepared and sent by Officer Moore and on the
Ziplock bag contained inside the envelope. She identified the chemist who conducted the tests on the
evidence submitted, she identified and explained the integrity and process of the tests made on the
contents of the Ziplock bag, and she then reported that the test results concluded that the substance
submitted by Officer Moore was cocaine in an amount of 2.8 grams.

 Appellant bases his tampering claim on the change in appearance of the crack cocaine
"rocks" between the time of seizure and the time of the trial. Officer Wilson testified that he had put
15 "rocks" of crack cocaine in the Ziplock bag when he made the purchase. When asked to identify
the "kind of condition" they were in at trial, he responded "It's been--they've fallen apart. The rocks
have fallen apart."

 Officer Moore also described the difference in condition of the evidence from the time
of seizure until it was presented at trial as follows:

Q. Can you describe for the jury what it looked like when you first received it?


A. As I recall, when I received it, as it's marked, it was tan, a rock-like substance,
which is the way that generally crack is distributed or sold or--before it's used,
and that's how I received it. What I received is what you would call crack rocks. 
And as you can see here, it's more of a crushed form. It looks more like baking
soda chunks than it does a rock-like substance.


Q. It's more granular now?


A. It's more granular now, yes.



 However, Officer Moore also explained the procedures for maintaining the integrity
of the evidence:


Q. Let me ask you Detective Moore: State's Exhibit 1, the brown envelope, does
it appear to have been tampered with in any way since you prepared it for
mailing?


A. It has been opened, but it seems to be marked with an evidence tape around it,
initials from evidence Texas D.P.S. Labs in Abilene, Texas.


Q. And so is that the--it's in the same or similar condition as it was when you first
prepared it?


A. Yes, it is. The tape has the same integrity as when I prepared it.


Q. And you--you're discussing the integrity of the evidence. Regarding State's
Exhibit 2, that plastic bag, the outer plastic bag, how is that sealed?


A. That's sealed with a heat seal, like a Seal-a-Meal. It's a heat shrink that seals
the bags for us.


Q. Why do you--you all use a heat seal?


A. To maintain the evidence integrity; it keeps items from falling out; it keeps
moisture from getting into them, et cetera.


Q. And it's--it would be a tamper indicator. If--if this bag had been tampered
with or opened, it would be indicated because you could tell because from the
heat seal?


A. Yes. The heat seals would be broken or misaligned, there would be holes in it,
et cetera.



 Ms. Hampton also testified based on the records prepared by Mr. Burch, the retired
chemist who performed the test on the evidence, and she stated that Mr. Burch indicated in his
records that the items submitted for testing were "[a] Ziplock with tan solid material." Accordingly,
there was uncontroverted testimony that the condition of the evidence remained the same at least
until the time of testing.

 Appellant also contends that the certified mail receipt indicating the person who
received the envelope at the lab was not presented at trial and, as a result, this demonstrates a break
in the chain of custody. As appellant sums up his argument in his brief:


Because of the change in appearance of the substance and the lack of the introduction
of any evidence as to who received and signed for the evidence at the DPS
Laboratory, one cannot rule out the possibility that the evidence was not tampered
with or that perhaps it is not the same evidence. (Emphasis added.)


We do not find this argument persuasive. There is no reason to believe the evidence did not simply
deteriorate by breaking down from "rock" form to granular form over the time between the seizure
and its presentation at trial. As the court of criminal appeals explained in Darrow v. State, 504
S.W.2d 416 (Tex. Crim. App. 1974), "appellant has shown the possibility which existed for someone
to tamper with the evidence, but nothing more. Appellant's objection goes to the weight, and not
the admissibility of the evidence." Id. at 417. See also Jones v. State, 617 S.W.2d 704, 705 (Tex.
Crim. App. 1981); Boss v. State, 489 S.W.2d 582, 583-84; Wright v. State, 420 S.W.2d 411, 413
(Tex. Crim. App. 1967). Furthermore, in Mitchell v. State, 488 S.W.2d 786 (Tex. Crim. App. 1973),
the court stated "[t]he evidence having sufficiently identified and traced the chain of custody of the
exhibit, absent a showing of the exhibit being tampered with or changed, appellant's objection goes
to the weight rather than the admissibility of the evidence. (Emphasis added.) Id. at 787. In the
present case, the evidence was sufficiently identified and the chain of custody of the exhibit was
traced. Furthermore, there was uncontroverted testimony that the condition of the evidence remained
the same at least until the time of testing. On these facts, we conclude that appellant has not made
a showing that the exhibit had been tampered with or changed. Accordingly, his objection goes to
the weight and not the admissibility of the evidence. We overrule his second point of error.


CONCLUSION


 Having overruled both of appellant's points of error, we affirm the judgment of the
trial court.



__________________________________________

Marilyn Aboussie, Chief Justice

Before Chief Justice Aboussie, Justices B. A. Smith and Yeakel

Affirmed

Filed: July 26, 2002

Do Not Publish
1. Appellant does not indicate whether he is raising a legal or factual sufficiency claim. We
need not determine that issue, however, because corroboration is not required.