# TEXAS COURT OF APPEALS, THIRD DISTRICT, AT AUSTIN

- - - - - - - - - - - - - -
## NO. 03-01-00718-CR
- - - - - - - - - - - - - -


**Rodney Samaniego, Appellant**


**v.**


**The State of Texas, Appellee**


**FROM THE DISTRICT COURT OF TOM GREEN COUNTY, 119TH JUDICIAL DISTRICT
NO. B-00-0998-S, HONORABLE RAE LEIFESTE, JUDGE PRESIDING**


Appellant Rodney Samaniego was convicted by a jury of the offense of delivery of a controlled substance, namely, cocaine, in the amount of one gram or more, but less than four grams. *See* Tex. Health & Safety Code Ann. ' 481.112(c) (West Supp. 2002). The jury found appellant guilty and found that he had been convicted of three prior felonies as alleged in the indictment. They assessed his punishment at forty-three years= imprisonment. *See* Tex. Pen. Code Ann. ' 12.42(d) (West Supp. 2002). In two points of error, appellant contends that the evidence was insufficient to convict him and the trial court erred in overruling his objection to the introduction of the cocaine. We will affirm the trial court=s judgment.

## BACKGROUND

On May 30, 2000, during an undercover crack cocaine investigation, a confidential informant contacted appellant regarding a Afriend@ of his who wanted to purchase crack cocaine. The informant brought his Afriend,@ undercover officer Vic Wilson, to the Inn of the Conchos Motel in San Angelo as instructed by appellant. At the motel, appellant sold a quantity of cocaine to Wilson. At the trial, the informant testified that he did not see the actual exchange take place. Furthermore, the evidence demonstrated that although the audio of this sales transaction was recorded, the recorder malfunctioned; however, Officer Wilson testified that the officer at the police station was able to listen to the participants in the transaction as it transpired. The informant testified that immediately after completing the transaction, he and Officer Wilson left the motel. Officer Wilson testified that he placed the cocaine in a Ziplock bag and marked the evidence, and he and the informant testified that they immediately delivered the cocaine to Officer Doug Moore, the evidence officer for the drug task force. Officer Wilson further testified that the same evidence presented to him at trial was the evidence he delivered to Officer Moore.

At trial, Officer Moore testified that he prepared an envelope on May 30 in which he placed the Ziplock bag containing the cocaine in order to send it to the Department of Public Safety laboratory in Abilene. Furthermore, he identified the envelope presented to him at trial as the envelope he had prepared and sent to the lab. And he identified the evidence presented to him at trial as the evidence he received from Officer Wilson and placed in the envelope for delivery to the DPS lab.

Shanna Lee Hampton, a chemist employed at the DPS lab, testified as one of the records custodians for the crime lab. She testified that she reviewed the lab report identified by the number assigned

to appellant=s case, she identified the chemist (J.R. Burch, currently retired) who conducted the tests on the evidence submitted, she identified and explained the integrity and process of the tests used, and she then reported that the test results concluded that the substance submitted by Officer Moore was cocaine in an amount of 2.8 grams.

## DISCUSSION

In his first point of error, appellant contends that the evidence was insufficient to convict him because the undercover officer=s testimony was uncorroborated.[1]  An offer-to-sell theory requires proof of corroboration. *See* Tex. Health & Safety Code Ann. ' 481.183(a) (West 1992).  Appellant, however, was not charged or convicted of offering to sell a controlled substance.  Rather, he was charged and convicted as a party to actual delivery.  Paragraph One of the indictment provides in part:

> . . . [Appellant] . . . did then and there intentionally and knowingly deliver a controlled substance, to wit: COCAINE, in an amount, by aggregate weight, including any adulterants and dilutants, of ONE (1) GRAM OR MORE BUT LESS THAN FOUR (4) GRAMS, by then and there *actually transferring* said controlled substance to VERN WILSON.

(Emphasis added.)  Furthermore, in the charge of the court, the trial court, after indicating that appellant had been Acharged by indictment with the offense of delivery of a controlled substance,@ then defined the term Adelivery@ as follows:

---

[1] Appellant does not indicate whether he is raising a legal or factual sufficiency claim.  We need not determine that issue, however, because corroboration is not required.

ADelivery@ means the *actual transfer* from one person to another of a controlled substance, whether or not there is an agency relationship.

(Emphasis added.) The jury found the appellant guilty of delivery of a controlled substance. Because appellant was convicted as a party to actual delivery, the State was not required to produce corroborating evidence. *See Cano v. State*, **3 S.W.3d 99, 107 (Tex. App‒Corpus Christi 1999, writ ref=d);** *Howery v. State*, 528 S.W.2d 230, 233 (Tex. Crim. App. 1975). We overrule appellant=s first point of error.

In his second point of error, appellant contends that the trial court abused its discretion in overruling his objection to the introduction of the controlled substance because there was a break in the chain of custody. He also claims that the substance had been tampered with between the time it was seized and the trial on the merits.

At trial, Officer Wilson identified the drug exhibit offered into evidence as the A15 rocks of crack@ cocaine that he purchased from appellant on May 30, 2000. He testified that he placed the Arocks@ in a Ziplock bag, which he marked with his initials, his badge number, and the date. He further testified that the evidence remained in his possession until he took the evidence to a prearranged meeting place and transferred it to Officer Moore.

Officer Moore testified that he prepared an envelope to Amaintain the integrity of the evidence@ because it was going to be sent to the DPS lab in Abilene. At trial, Officer Moore identified the envelope as Astamped with my name, my label,@ and he also identified his handwriting on the envelope. Furthermore, Officer Moore identified the Ziplock bag containing the crack cocaine that he placed in the envelope by referencing the case number 10648, his initials, and the date he had marked on the bag. He then

**4**

testified he retained the evidence in his exclusive possession until he mailed it to the DPS lab on June 1, 2000. Although Officer Moore testified he sent the envelope via certified mail, he did not have the receipts with him at trial.

Ms. Hampton, the chemist employed at the DPS lab, testified as one of the records custodians for the crime lab. She testified that she reviewed the lab report identified as case number 10648. She also testified that the case number assigned by the lab for testing the evidence submitted in case number 10648 also appeared on the envelope prepared and sent by Officer Moore and on the Ziplock bag contained inside the envelope. She identified the chemist who conducted the tests on the evidence submitted, she identified and explained the integrity and process of the tests made on the contents of the Ziplock bag, and she then reported that the test results concluded that the substance submitted by Officer Moore was cocaine in an amount of 2.8 grams.

Appellant bases his tampering claim on the change in appearance of the crack cocaine Arocks@ between the time of seizure and the time of the trial. Officer Wilson testified that he had put 15 Arocks@ of crack cocaine in the Ziplock bag when he made the purchase. When asked to identify the Akind of condition@ they were in at trial, he responded AIt=s beenCthey=ve fallen apart. The rocks have fallen apart.@

Officer Moore also described the difference in condition of the evidence from the time of seizure until it was presented at trial as follows:

Q. Can you describe for the jury what it looked like when you first received it?

A. As I recall, when I received it, as it=s marked, it was tan, a rock-like substance, which is the way that generally crack is distributed or sold orCbefore it=s used, and that=s

how I received it. What I received is what you would call crack rocks. And as you can see here, it=s more of a crushed form. It looks more like baking soda chunks than it does a rock-like substance.

Q. It=s more granular now?

A. It=s more granular now, yes.


However, Officer Moore also explained the procedures for maintaining the integrity of the

evidence:


Q. Let me ask you Detective Moore: State=s Exhibit 1, the brown envelope, does it appear to have been tampered with in any way since you prepared it for mailing?

A. It has been opened, but it seems to be marked with an evidence tape around it, initials from evidence Texas D.P.S. Labs in Abilene, Texas.

Q. And so is that theCit=s in the same or similar condition as it was when you first prepared it?

A. Yes, it is. The tape has the same integrity as when I prepared it.

Q. And youCyou=re discussing the integrity of the evidence. Regarding State=s Exhibit 2, that plastic bag, the outer plastic bag, how is that sealed?

A. That=s sealed with a heat seal, like a Seal-a-Meal. It=s a heat shrink that seals the bags for us.

Q. Why do youCyou all use a heat seal?

A. To maintain the evidence integrity; it keeps items from falling out; it keeps moisture from getting into them, et cetera.

Q. And it=sCit would be a tamper indicator. IfCif this bag had been tampered with or opened, it would be indicated because you could tell because from the heat seal?

**6**

A.  Yes.  The heat seals would be broken or misaligned, there would be holes in it, et cetera.

Ms. Hampton also testified based on the records prepared by Mr. Burch, the retired chemist who performed the test on the evidence, and she stated that Mr. Burch indicated in his records that the items submitted for testing were A[a] Ziplock with tan solid material.@  Accordingly, there was uncontroverted testimony that the condition of the evidence remained the same at least until the time of testing.

Appellant also contends that the certified mail receipt indicating the person who received the envelope at the lab was not presented at trial and, as a result, this demonstrates a break in the chain of custody.  As appellant sums up his argument in his brief:

> Because of the change in appearance of the substance and the lack of the introduction of any evidence as to who received and signed for the evidence at the DPS Laboratory, one cannot rule out the *possibility* that the evidence was not tampered with or that perhaps it is not the same evidence.  (Emphasis added.)

We do not find this argument persuasive.  There is no reason to believe the evidence did not simply deteriorate by breaking down from Arock@ form to granular form over the time between the seizure and its presentation at trial.  As the court of criminal appeals explained in *Darrow v. State*, 504 S.W.2d 416 (Tex. Crim. App. 1974), Aappellant has shown the *possibility* which existed for someone to tamper with the evidence, but nothing more.  Appellant=s objection goes to the weight, and not the admissibility of the evidence.@  *Id*. at 417.  *See also Jones v. State*, 617 S.W.2d 704, 705 (Tex. Crim. App. 1981); *Boss v. State*, 489 S.W.2d 582, 583-84; *Wright v. State*, 420 S.W.2d 411, 413 (Tex. Crim. App. 1967).

**7**

Furthermore, in *Mitchell v. State*, 488 S.W.2d 786 (Tex. Crim. App. 1973), the court stated A[t]he evidence having sufficiently identified and traced the chain of custody of the exhibit, *absent a showing* of the exhibit being tampered with or changed, appellant=s objection goes to the weight rather than the admissibility of the evidence. (Emphasis added.) *Id.* at 787. In the present case, the evidence was sufficiently identified and the chain of custody of the exhibit was traced. Furthermore, there was uncontroverted testimony that the condition of the evidence remained the same at least until the time of testing. On these facts, we conclude that appellant has not made a showing that the exhibit had been tampered with or changed. Accordingly, his objection goes to the weight and not the admissibility of the evidence. We overrule his second point of error.

## CONCLUSION

Having overruled both of appellant=s points of error, we affirm the judgment of the trial court.

_____

Marilyn Aboussie, Chief Justice

Before Chief Justice Aboussie, Justices B. A. Smith and Yeakel

Affirmed

Filed: July 26, 2002

Do Not Publish