Maria Consuelo CANO, Appellant,

v.

The STATE of Texas, Appellee.

Robert Sandoval Silva, Appellant,

v.

The State of Texas, Appellee.

Nos. 13–97–859–CR, 13–97–862–CR.

Court of Appeals of Texas,
Corpus Christi.

Aug. 31, 1999.

Stephn M. Orr, Viktor Olavson, Austin, for Appellant.

George P. Morrill, II, Dist. Atty., Beeville, for State.

Before Justices DORSEY, CHAVEZ, and RODRIGUEZ.

## OPINION

Opinion by Justice DORSEY.

Robert Silva and Maria Cano, common-law husband and wife, jointly appeal their convictions for delivery of a controlled substance. After a Bee County jury convicted them, the court sentenced Robert to ten years incarceration and Maria to eight years probation. They appeal these convictions by ten points of error.

### The Trial

Cano and Silva were convicted of delivering more than one but less than four grams of cocaine to a confidential police informant. The State's version of the facts is that a confidential informant already employed by the State approached them with the prospect of setting up a drug buy from Robert Silva. The informant said Silva offered to sell her cocaine on another occasion. The State's detectives gave money to the informant, placed a wire transmitter on her, and sent her to the residence of Silva and Cano to make the buy. The detectives followed her and listened on the transmitter, but the tape they made from this was very poor. The informant said that first a man came to the door, then Maria. She spoke with Maria regarding purchasing $170.00 worth of cocaine and said she wanted to speak with Robert. The testimony is vague, but Maria made some effort to sell her the drugs or at least refer the informant to Robert so he could sell her the cocaine. After the informant requested to speak to Robert, he came to the door and sold her nine "papers" of cocaine.

The trial was sharply contested. The State presented testimony from two detectives and the confidential informant who planned and executed the drug buy. All testified that they were a part of the drug buy at the Silva/Cano residence and that

the informant went to the door and spoke first with Maria Cano, who offered to sell her drugs, and then with Robert Silva, who did sell her nine "papers" of cocaine. The State's witnesses identified the Cano/Silva residence, the cocaine involved in the transaction, and Cano and Silva themselves.

While the detectives could not see the actual exchange of hands during the drug buy, they were parked nearby and could see the back of the informant during most of the transaction. They listened in their car through a wire transmitter to the entire transaction, although the resulting tape recording was of very poor quality. The detectives met with the informant before the buy, prepared her for the buy, followed her to the house, watched part of the transaction which took place at the front door of the residence, listened to it, and followed her from the residence to the nearby dog pound where they all got out of their vehicles and met regarding the buy. At this meeting, the informant turned over the cocaine to the detectives. The detectives also testified that during that meeting, they saw Robert Silva drive by and appear to recognize what was going on.

Appellants both testified that they had never seen the informant before and that they were not home when the alleged drug buy took place. Instead, they claimed they were at Robert's sister's house that day from approximately 10:00 a.m. until 10:00 p.m. at a belated New Year's celebration. Robert testified that he left the party a couple of times to attend physical therapy sessions for a knee injury. Robert's sister and another family friend corroborated the couple's alibi. Doris Wren, a long-time friend of Maria's, also testified on behalf of the couple.

None of the witnesses in this case were pristine. The officers' testimony conflicted with the informant's, the informant's conflicted with her own, Robert's was inconsistent, and Robert's sister made a blunder that likely seriously undermined her credibility. The informant was an especially suspect witness, and her testimony even "went both ways" on whether or not Maria actually offered to sell her drugs. Doris Wren did not know anything particularly relevant. The fundamental question for the jury was whether they believed the alibi.

### Legal Sufficiency of the Evidence Convicting Cano

By appellants' first two points of error, they contend that the evidence was legally insufficient to support Maria Cano's conviction for delivery of more than one gram of a controlled substance. First, Cano complains that the evidence was insufficient to convict her as charged of "actual" delivery of a controlled substance. She argues that the evidence was insufficient to show either that she had direct or indirect control of the contraband prior to its delivery or that it was delivered by her husband at her instance or direction. However, she misconstrues the elements required to prove that she was a party to the actual delivery of a controlled substance by Robert. To show Maria guilty as a party, the State need only prove that she aided or attempted to aid *Robert's* delivery of the substance.

The evidence in criminal cases is legally sufficient if, after viewing it in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt. *See Jackson v. Virginia*, 443 U.S. 307, 319, 99 S.Ct. 2781, 2789, 61 L.Ed.2d 560 (1979); *Whitaker v. State*, 977 S.W.2d 595, 598 (Tex.Crim.App.1998); *Barrera v. State*, 978 S.W.2d 665, 670–71 (Tex.App.—Corpus Christi 1998, no pet.). The jury, as the trier of fact, is the exclusive judge of the credibility of the witnesses and of the weight to be given their testimony. *See* Tex.Code Crim. Proc. Ann. art. 38.04 (Vernon 1979); *Penagraph v. State*, 623 S.W.2d 341, 343 (Tex.Crim.App. [Panel Op.] 1981). The jury is free to accept or reject all or any part of the evidence presented by either party. *See*

*Saxton v. State,* 804 S.W.2d 910, 914 (Tex. Crim.App.1991); *Little v. State,* 853 S.W.2d 179, 183 (Tex.App.—Corpus Christi 1993, no pet.) Reconciliation of evidentiary conflicts is left exclusively to the jury, who may draw reasonable inferences and make reasonable deductions therefrom. *See Bowden v. State,* 628 S.W.2d 782, 784 (Tex.Crim.App.1982); *Benavides v. Texas,* 763 S.W.2d 587, 588–89 (Tex.App.—Corpus Christi 1988, pet. ref'd). The appellate court is not free to disregard, realign, or weigh the evidence, but must consider all the evidence, whether rightly or wrongly admitted. *See Moreno v. State,* 755 S.W.2d 866, 867 (Tex.Crim. App.1988). If there is evidence that establishes guilt beyond a reasonable doubt, and the trier of fact believes that evidence, an appellate court may not reverse the conviction due to legal insufficiency of the evidence. *See Matson v. State,* 819 S.W.2d 839, 846 (Tex.Crim.App.1991).

■ Sufficiency of the evidence is measured by the elements of the offense as defined by the "hypothetically correct jury charge for the case." *See Malik v. State,* 953 S.W.2d 234, 240 (Tex.Crim.App.1997). The charge correctly set forth the law as it applied to the facts in this case with regard to Maria:

> [I]f you find from the evidence beyond a reasonable doubt that on or about the 4th day of January, A.D., 1996, ... the defendant MARIA CONSUELA CANO, did then and there, with intent to promote or assist the commission of said offense, aided or attempted to aid ... Robert Sandoval Silva in the commission of said offense ... by offering to deliver cocaine to [the confidential informant] for ROBERT SANDOVAL SILVA and by making his presence available so that the said ROBERT SANDOVAL SILVA could make the sale, then you will find the defendant guilty as charged.

Also, the jury was properly instructed on how the law of parties applies in this case to the elements of "delivery" and "intent":

Our law provides that a person commits an offense if she intentionally or knowingly delivers a controlled substance. Cocaine is a controlled substance.

. . .

By the term "deliver," as used in this charge is meant that actual transfer from one person to another of a controlled substance, whether or not there is an agency relationship.

. . .

All persons are parties to an offense who are guilty of acting together in the commission of an offense. A person is criminally responsible as a party to an offense if the offense is committed by her own conduct or another for which she is criminally responsible.

A person is criminally responsible for an offense committed by the conduct of another if acting with intent to promote or assist the commission of the offense, she solicits, encourages, directs, aids, or attempts to aid the other person to commit the offense.

Each party to an offense may be charged with commission of the offense.

■ The "delivery" element in a delivery of a controlled substance case may be proven under three different theories: actual transfer, constructive transfer, and "offer-to-sell." *See Conaway v. State,* 738 S.W.2d 692, 694 (Tex.Crim.App.1987); *Pena v. State,* 776 S.W.2d 746, 749 (Tex. App.—Corpus Christi 1989, pet refd.). Actual delivery occurs when real possession and control of the substance is transferred from one person to another. *See id.* "Constructive delivery" occurs when a seller transfers a controlled substance either belonging to him or under his control by some other person or means at the direction of the seller. *See id.* Delivery by "offer-to-sell" is accomplished by the representation, by word or deed, that the

person has a controlled substance to sell. *See id.*

The State may plead all three forms of delivery in the indictment. *See State v. Garrett*, 798 S.W.2d 311, 314 (Tex. App.—Houston [1st Dist.] 1990), *affirmed*, 824 S.W.2d 181 (Tex.Crim.App.1992). Each of the theories may be submitted alternatively in the jury charge. *See Zanghetti v. State*, 618 S.W.2d 383, 386–87 (Tex.Crim.App.1981). Where a general verdict is returned and the evidence is sufficient to support a finding under any of the alternative methods submitted, no error is shown. *See Atuesta v. State*, 788 S.W.2d 382, 385 (Tex.App.—Houston [1 st Dist.] 1990, pet ref'd.).

Cano cites *Davila v. State* for the proposition that merely relaying an offer from buyer to seller is insufficient as a matter of law to show delivery. 664 S.W.2d 722, 724–25 (Tex.Crim.App.1984). *Davila*, though, was a constructive transfer case, and the court expressly noted that there the appellant was *not* charged with being a party to the actual transfer. *Davila*, 664 S.W.2d at 724. Cano, on the other hand, *was* convicted as a party to the actual transfer. Thus, *Davila* clearly does not apply.

The law of parties may be applied to the offense of delivery of a controlled substance. *See Gonzalez v. State*, 838 S.W.2d 770, 771 (Tex.App.—Corpus Christi 1992, no pet.); *Francis v. State*, 909 S.W.2d 158, 162 (Tex.App.—Houston [14 th Dist.] 1995, no pet.). Under that theory, the State must show that the actual transferor committed the offense and that the party encouraged, directed, or aided in the commission of the offense. *See Gonzalez*, 838 S.W.2d at 771; *Hubbard v. State*, 896 S.W.2d 359, 362 (Tex.App.— Houston [1st Dist.] 1995, no pet.); *Santos v. State*, 834 S.W.2d 953, 954–55 (Tex. App.—Beaumont 1992, pet ref'd.). Evidence is sufficient to support a conviction under the law of parties where the actor is physically present at the commission of the offense, and encourages the commission of the offense either by words or other agreement. *See Burdine v. State*, 719 S.W.2d 309, 315 (Tex.Crim.App.1986). The court may examine the events occurring before, during, and after the commission of the offense, and may rely on the actions of the defendant which demonstrate an understanding and common design to commit the offense. *See id.; Navarro v. State*, 776 S.W.2d 710, 711 (Tex.App.—Corpus Christi 1989, pet ref'd.).

The jury could have found Maria a party to the offense by finding that she encouraged, directed, aided or attempted to aid Robert in the commission of the offense. The confidential informant testified that she talked with Maria Cano shortly after arriving at the residence, that Maria spoke with her about cocaine, that she told Maria she wanted to buy $170 worth, and that Maria said something like "talk to Robert." Cano even admits in her brief that the evidence may have shown that she relayed the informant's offer to buy to Robert. Under the law of parties, that is sufficient. All that was required was proof that Maria aided Robert in some way in transferring the cocaine to the informant. The jury was free to infer her intention to aid from circumstantial evidence. Her first point of error is overruled.

In her second point of error, Cano complains that the evidence is legally insufficient to support the charge that she delivered more than one gram of cocaine. Because she did not negotiate quantity and price to consummation, she argues that no inference can be drawn that she knew her husband would sell more than one gram to the informant. Again, under the law of parties, Cano need not have the same intent or knowledge required of Robert in order to be found guilty. Rather, if the jury found Maria a party to the crime because she aided or attempted to aid Robert in the delivery of over one gram, she can be held guilty for the same crime

for which he is guilty. Her second point of error is overruled.

### Variance Between Indictment and Jury Charge

 Maria next complains that the charge permitted the jury to convict her under a theory of delivery not included in the indictment. An indictment for the delivery of a controlled substance must specify which theory or theories of delivery the State will rely upon. *See Geter v. State,* 779 S.W.2d 403, 406 (Tex.Crim.App.1989). A material variance between the allegations in an indictment and the proof offered at trial is fatal to a conviction if it misled the party to his prejudice. *See Grant v. State,* 970 S.W.2d 22, 24 (Tex. Crim.App.1998). · The indictment charged Cano with actual delivery. She argues that she was convicted under the offer-to-sell theory. We disagree. While the jury charge contained language including the word offer, it clearly referred to actual delivery under the party theory. We find no variance in the indictment, the proof, and the charge. Cano's third point of error is overruled.

### Corroboration Requirement for "Offer-to Sell" Theory

 Next, Maria argues that the jury convicted her on the offer-to-sell theory without any corroboration of the offer. She contends that the delivery statute requires corroboration of the offer for a conviction on offer-to-sell theory. Offer-to-sell theory convictions do require corroboration. *See* TEX. HEALTH & SAFETY CODE ANN. § 481.183(a) (Vernon 1992). However, because we find that Cano was convicted as a party to actual delivery, there is no necessity for corroboration. We overrule her fourth point of error.

### Factual Sufficiency

 Both Maria and Robert contend that the evidence adduced at trial was factually insufficient to support their convictions. In reviewing factual sufficiency, this court must view all the evidence without the prism of "in the light most favorable to the prosecution," and set aside the verdict only if it is so contrary to the overwhelming weight of the evidence as to be clearly wrong and unjust. *See Cain v. State,* 958 S.W.2d 404, 407 (Tex.Crim.App. 1997); *Clewis v. State,* 922 S.W.2d 126, 129 (Tex.Crim.App.1996). The court of criminal appeals has discussed three major principles to guide courts of appeals when conducting a factual sufficiency review. *See Cain,* 958 S.W.2d at 407. First, we must observe the principle of deference to jury findings. The jury is the judge of the facts, and an appellate court should only exercise its fact jurisdiction to prevent a manifestly unjust result. *See id.* In that regard, we are not free to reweigh the evidence and set aside a jury verdict merely because a different result is more reasonable. TEX.CODE CRIM. PROC. ANN. art. 36.13 (Vernon 1981) and art. 38.04 (Vernon 1979), *See id.; Clewis,* 922 S.W.2d at 135. Second, "when a court of appeals reverses a lower court decision on factual sufficiency grounds, it should detail the evidence relevant to the issue in consideration and clearly state why the jury's finding is factually insufficient ... as to be manifestly unjust; why it shocks the conscience; or clearly demonstrates bias." *Cain,* 958 S.W.2d at 407. If we reverse a conviction for factual insufficiency, we must state how the contrary evidence greatly outweighs the evidence in support of the verdict. *See id.* Finally, in reviewing for factual sufficiency, we review all the evidence. *See id; Clewis,* 922 S.W.2d at 129. This contrasts with a legal sufficiency review, where we consider only· the evidence supporting the verdict. *See Cain,* 958 S.W.2d at 407.

 Cano and Silva argue that the credibility of the confidential informant was so undermined that her entire testimony should be disregarded. However, the trial court was correct in ruling that the credibility of a particular witness or piece of evidence falls squarely within the province of the jury. The State produced

two sheriff detectives experienced in narcotics investigation techniques who testified they arranged the drug buy, had background information that Robert was a drug dealer, coordinated with the informant, and took possession of the cocaine. A chemist testified that the substance was indeed cocaine. The informant testified that Robert sold her the cocaine. The State introduced the tape recording of the actual drug buy enabling the jury to hear the transaction and the defendants' voices. The effectiveness of this evidence was solely for the jury to determine.

The jury had sufficient evidence to find Robert guilty beyond a reasonable doubt. Robert simply testified that he was not home on the day of the buy and that he had never met the informant. His wife, his sister and a close family friend were the only witnesses who corroborated his alibi. The jury was within its province to believe the State's testimony and disbelieve Robert's.

■ Likewise, the jury had sufficient evidence upon which to base Maria's conviction. The trial court could convict Maria of actual delivery under the law of parties if sufficient evidence showed that Robert committed the offense and Maria solicited, encouraged, directed, aided or attempted to aid Robert in the commission of the offense. *See Gonzalez v. State,* 838 S.W.2d 770, 771 (Tex.App.—Corpus Christi 1992, no pet.); *Burdine v. State,* 719 S.W.2d 309, 315 (Tex.Crim.App.1986). Again, the jury was free to examine the events occurring before, during, and after the commission of the offense, and may to look to Maria's actions that demonstrated an understanding and common design to commit the offense.

The informant testified that when she went to the door at the Cano/Silva residence, a man she did now know answered the door. She asked to speak with the "man who drove the gray car" and was told that was Robert. Instead of Robert coming to the door next, Maria came to the door. The informant testified about her conversation with Mario as follows:

What did you-all talk about?

*Cocaine.*

Okay. What did you tell [Maria Cano]?

*I told her that I wanted to buy some coke, and I had $170.*

And what did she say?

*She asked if—did I want to talk to the gentleman. And then I had said again, I guess I said how many—I don't know if I said—then they said— they told me Robert.*

Okay. They told you Robert?

*Uh-huh.*

Did she try and sell you the cocaine?

*I would say yeah, tried.*

Okay. Did you want to talk to Robert instead?

*I preferred buying it from Robert.*

. . .

Now, after your conversation with Defendant Cano, what happened?

*It—if I remember—I don't quite remember much of it, but I think all— Robert came from the back.*

Okay. Now, when Robert came from the back, where were you?

*I was still at the door.*

Okay. When he got there, what did you all talk about? What happened?

*I asked Robert that I was wanting to buy some coke from him, and I had so much amount of money on me.*

Okay. Did you negotiate a buy?

*Yes, we did.*

At trial, the informant admitted contradicting her trial testimony by saying, in a conversation that took place prior to the trial between the informant and the attorneys, that Maria had nothing to do with the drug transaction. However, she also testified that after that conversation, she listened to the tape recording of the transaction and remembered her conversation with Cano during the buy. The informant

also identified Cano's voice on the audio tape that was heard by the jury at trial.

When Robert came to the door and made the transaction immediately after the informant spoke with Maria, the jury could have reasonably inferred that Maria was standing nearby and knew what was going on. The jury could also reasonably infer from her reaction to the informant's request and the fact that Robert shortly appeared at the door and made the transaction that Maria was assisting Robert in delivering the cocaine. The jury has the exclusive authority to determine the weight to attach to a particular piece of evidence.

Also, by flatly denying ever having seen the informant before, and offering alibi testimony, Cano pitted herself squarely against the credibility of the informant and police officer testimony. In effect, she asked the jury to believe that the whole transaction simply did not happen. In so doing, she put her own credibility at stake in front of the jury. The jury was free to not believe her testimony and then to draw any reasonable inference from that fact. We do not find that the jury's verdict with regard to Cano shocks the conscience, clearly demonstrates bias or is manifestly unjust. Therefore, appellants' points of error on factual insufficiency are overruled.

### Admission of Extraneous Offense Evidence

Appellants complain that the trial court erred in admitting evidence that the police had received information that drugs were being sold from their house prior to the arranged buy. They point to the following portion of the trial:

Prosecutor: Did ... you [have] the Silva–Cano house under surveillance prior to this offense?

Detective: Yes.

Prosecutor: ... Why were you watching their house?

Detective: On occasions, we'd received information that ... they were dealing narcotics out of their residence.

Def. counsel: Objection, Your Honor. I ask—I move for a mistrial.

Appellants argue that the court erred in denying their motion for mistrial and by admitting this testimony because it was inadmissible hearsay and because it was extraneous offense evidence inadmissible under Rule 404(b) of the Texas Rules of Evidence. See TEX.R. EVID. 801(d), 404(b). We disagree.

The trial court correctly denied appellants' motion for mistrial. Mistrial is an extreme remedy appropriate only when the objectionable event is so emotionally inflammatory that curative instructions are not likely to prevent the jury from being unfairly prejudiced against the defendant. See Bauder v. State, 921 S.W.2d 696, 698 (Tex.Crim.App. 1996). The law always favors that the trial continue, if possible. See id. Grant or denial of a motion for mistrial is reviewed by this court under the abuse of discretion standard. A witness' inadvertent reference to an extraneous offense would only necessitate a mistrial where that reference was clearly calculated to inflame the minds of the jury or was of such damning character as to suggest it would be impossible to remove the harmful impression from the jurors' minds. See Rojas v. State, 986 S.W.2d 241, 250 (Tex.Crim.App.1998); Kipp v. State, 876 S.W.2d 330, 339 (Tex. Crim.App.1994). The trial judge abuses its discretion if it grants a mistrial despite the availability of less drastic alternatives. See Brown v. State, 907 S.W.2d 835, 839 (Tex.Crim.App.1995). We hold that even if we assume that admission of the testimony was error, its admission did not cause the degree of incurable prejudice that would justify a mistrial. Thus, the trial court did not abuse its discretion in denying appellants' motion for mistrial.

Next, we address the admissibility of the testimony. Appellants made a gen-

eral objection to the testimony, and then moved for mistrial. On appeal, they argue that the evidence was hearsay and should have been excluded because it was evidence of extraneous offenses and its relevance was substantially outweighed by the danger of unfair prejudice. *See* TEX.R. EVID. 801(d), 404(b). We first note that appellants' objection was too broad to make the trial court aware of their precise complaint regarding the testimony. *See* TEX.R.APP. P. 33.1; *Broxton v. State*, 909 S.W.2d 912, 918 (Tex.Crim.App.1995). A general objection will preserve error only when the error is obvious from the surrounding context. *See Carmona v. State*, 941 S.W.2d 949, 957 (Tex.Crim.App.1997). Unless the specific grounds of the objection are apparent from the context, failure to object with the requisite specificity can result in waiver of the issue for purposes of appeal. *See* TEX.R.APP. P. 33.1; *Broxton*, 909 S.W.2d at 918; *see also Lankston v. State*, 827 S.W.2d 907, 909 (Tex.Crim. App.1992). We will address appellants' arguments assuming without deciding that the appropriate objections were made.

First, this evidence is not hearsay. Hearsay is a statement, other than one made by the declarant while testifying, offered in evidence to prove the truth of the matter asserted. *See* TEX.R. EVID. 801(d). Officer Madigral's testimony that he had received information that drugs were being dealt from appellants' residence prior to the arranged buy was not offered to prove that drugs were actually being dealt from the residence at that time, but rather was offered to show why the investigation had focused on appellants. Because it was not offered to prove the truth of the matter asserted, it was not hearsay. "An extra-judicial statement or

writing may be admitted as circumstantial evidence from which an inference may be drawn, and not for the truth of the matter stated therein, without violating the hearsay rule." *See Gholson v. State*, 542 S.W.2d 395, 398 (Tex.Crim.App.1976).

Other courts have held that an out-of-court statement offered at trial to establish the circumstances leading to the officer's approach of the defendant is not hearsay if it is not offered to prove the truth of the matter asserted. *See Levario v. State*, 964 S.W.2d 290, 296 (Tex.App.—El Paso 1997, no pet.) (holding officer's testimony that he received anonymous information regarding possible narcotics activity involving defendant not hearsay); *Cormier v. State*, 955 S.W.2d 161, 162 (Tex.App.—Austin 1997, no pet.) (holding testimony that defendant was targeted by the drug task force because police had "received information" that defendant was trafficking large amounts of cocaine nonhearsay because not offered to prove defendant was a drug dealer but to explain why the task force chose to investigate him).[1] Similarly, a police officer may testify about anonymous or confidential tips he received for the purpose of showing why an investigation focused on a particular individual. *See Levario v. State*, 964 S.W.2d at 296; *Cormier v. State*, 955 S.W.2d at 162. This type of testimony assists the jury's understanding of the events by providing context for the police officer's actions. Thus, we hold the trial court correctly overruled appellants' objection to the extent the objection urged exclusion of the testimony on the basis it was inadmissible hearsay.

We also hold the trial court did not abuse its discretion in allowing the testi-

---

1. *Accord Jones v. State*, 843 S.W.2d 487, 499 (Tex.Crim.App.1992) (holding statement offered to show why officer got arrest warrant and searched defendant was not hearsay); *Dinkins v. State*, 894 S.W.2d 330, 347 (Tex. Crim.App.1995) (holding that victim's appointment book containing an entry indicating defendant had appointment with victim during time of murder nonhearsay because

offered to explain how defendant became a suspect); *cf. Schaffer v. State*, 777 S.W.2d 111, 115 (Tex.Crim.App.1989) ("Almost always it will be relevant for a testifying officer to relate how she happened upon the scene of a crime or accident; thus, it is permissible for her to testify that she was acting in response to "information received.").

mony over a 404(b) objection. *See* Tex.R. Evid. 404(b). Rule 404(b) prohibits admission of evidence of other crimes, wrongs or acts to prove the character of a person in order to show that he acted in conformity therewith. This sets forth the general rule that an accused is entitled to be tried for the offense for which he is charged and not for some collateral crime or for being a criminal generally. *See* Tex.R. Evid. 404(b); *Couret v. State,* 792 S.W.2d 106, 108 (Tex.Crim.App.1990). Exceptions to this rule allow evidence of extraneous offenses to be admitted if relevant to a material issue in the case, so long as the relevancy value outweighs the prejudicial potential. *See* Tex.R. Evid. 404(b); *see also* Tex.R. Evid. 403 (stating that relevant evidence may be excluded if its probative value is substantially outweighed by the danger of unfair prejudice). That is, extraneous offense evidence must be relevant to a fact of consequence in the case and its probative value must not be outweighed by other factors. *See* Tex.R. Evid. 401, 402, 403; *see also Rankin v. State,* 974 S.W.2d 707, 709–11 (Tex.Crim. App.1996). Thus, Rule 404(b) has been interpreted to mean that evidence of extraneous offenses is admissible only if: (1) it is introduced for a purpose other than to show character conformity, (2) has relevance to a fact of consequence in the case, and (3) remains free of any other constitutional or statutory prohibitions. *Rankin,* 974 S.W.2d at 709.

 A trial court's admission of extraneous offense testimony is reviewed under the abuse of discretion standard. *See Santellan v. State,* 939 S.W.2d 155, 168–69 (Tex.Crim.App.1997) (en banc); *Wilks v. State,* 983 S.W.2d 863, 866 (Tex.App.— Corpus Christi 1998, no pet.). The decision to admit such evidence will be upheld so long as the trial court properly admitted the evidence in light of the applicable standards and its decision lies within the zone of reasonable disagreement. *See Rankin,* 974 S.W.2d at 718. The trial court's determination of admissibility under Rule 403

must be reasonable in view of all relevant facts. *See Rachal v. State,* 917 S.W.2d 799, 808 (Tex.Crim.App.1996).

 While we have misgivings about the relevance of the objectionable evidence, especially considering the overlay of the balancing test mandated by Rule 403, we cannot say that its admission amounted to an abuse of discretion. Indeed, the trial court may have sustained a proper objection to this evidence. Thus, we cannot fairly hold it abused its discretion in light of the imprecise objection lodged by appellants at trial. Therefore, because appellants' objection lacked specificity and because we do not find the prejudicial nature of this testimony to substantially outweigh its probative value, we hold that the trial court did not abuse its discretion in admitting the evidence. We overrule points seven and eight.

### *Ineffective Assistance of Counsel*

 Finally, both Maria and Robert complain that their trial counsel was unconstitutionally ineffective for: (1) failing to timely object to hearsay evidence about Robert's reputation for dealing drugs and (2) failing to object to and obtain a correct jury instruction regarding the theory of delivery under which Maria was convicted. The two-part test for evaluating constitutional effectiveness of counsel inquires: (1) whether counsel's performance was deficient, and (2) whether, but for counsel's deficient performance, the result of the proceeding would have been different. *See Strickland v. Washington,* 466 U.S. 668, 687–94, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984). To satisfy the first element of the test, appellant must show that the record establishes that trial counsel failed to provide "reasonably effective assistance." *See Strickland,* 466 U.S. at 687–88, 104 S.Ct. 2052. That is, appellant must prove that counsel's performance was unreasonable under prevailing professional norms and that the challenged action was not sound trial strategy. *See Strickland,* 466 U.S. at 688, 104 S.Ct. 2052. The sec-

ond prong of the test requires the appellant to show a reasonable probability exists that he was harmed by the deficient performance. *See id.* A "reasonable probability" is a probability sufficient to undermine confidence in the outcome of the proceeding. *See id.*

■■■■■ The placement of the burden of proof and the operation of presumptions play important roles in analyzing effectiveness of counsel. Judicial scrutiny of trial counsel's performance must be deferential and based upon the circumstances as they appeared at the time of representation. *See Henderson v. Texas,* 962 S.W.2d 544, 557 (Tex.Crim.App.1997). The appellant bears the burden and must prove all elements by a preponderance of the evidence. *See Stafford v. Texas,* 813 S.W.2d 503 2, 506 n. 1 (Tex.Crim.App.1991). The reviewing court indulges a strong presumption that trial counsel's conduct falls within a wide range of reasonable professional assistance. *See McFarland v. State,* 928 S.W.2d 482, 500 (Tex.Crim.App.1996); *Rangel v. State,* 972 S.W.2d 827, 835 (Tex. App.—Corpus Christi 1998, pet ref'd). The challenged action is presumed a matter of reasonable trial strategy in the absence of controverting evidence. *See Miniel v. State,* 831 S.W.2d 310, 323 (Tex. Crim.App.1992); *Sanders v. State,* 963 S.W.2d 184, 189 (Tex.App.—Corpus Christi 1998, pet ref'd). Finally, the lawyer's effectiveness is judged by the totality of the representation and not isolated acts or omissions. *See Garcia v. State,* 887 S.W.2d 862, 880 (Tex.Crim.App.1994); *Rangel,* 972 S.W.2d at 835. The heavy *presumptions* acknowledge the inherent imprecision in assessing a lawyer's effectiveness after-the-fact. *See Ex parte Walker,* 777 S.W.2d 427, 430 (Tex.Crim. App.1989).

■■■ We find appellants' argument regarding trial counsel's failure to object to the reputation for being drug dealers evidence fails under the second prong of the *Strickland* test. Without ruling on the admissibility of that evidence, we find that its exclusion would not have created a probability sufficient to undermine confidence in the outcome of the original trial. This case turned on the testimony of a confidential informant—an eyewitness to the transaction—and two detectives who were nearby and monitoring the transaction. Even had the jury heard no evidence regarding why the undercover operation became focused on appellants, the testimony of these witnesses would not have been diminished in any meaningful way. We hold that the evidence about the confidential tips of drug dealing from the house were not significant enough to amount to harmful error, if any.

Finally, because we find no error in the charge, counsel was not ineffective for failing to object to or correct it. Accordingly, we overrule points of error nine and ten and AFFIRM the judgment of the trial court.