

# IN THE
# TENTH COURT OF APPEALS

### No. 10-12-00353-CR

**SARAH BETH PEARCE,**

**Appellant**

 **v.**

**THE STATE OF TEXAS,**

**Appellee**

**From the County Court
Navarro County, Texas
Trial Court No. C-34166-CR**

## MEMORANDUM OPINION

In six issues, appellant, Sarah Pearce, challenges her conviction for forgery by passing, a third-degree felony. *See* TEX. PENAL CODE ANN. § 32.21(a)(1)(A)-(B), (e)(1) (West 2011). We affirm.

### I.    BACKGROUND

Appellant was charged with passing a forged check in the amount of $150 that purported to be the act of Clifford Crowe. The testimony at trial revealed that Robert Newland is the grand-nephew of Crowe and that Newland called Crowe his

grandmother. Newland testified that he regularly helped out Crowe and that Crowe occasionally lent him "three or four dollars" and once bailed him out of jail. Newland also testified that for a little longer than a year, he was in a romantic relationship with appellant. Newland admitted to taking, forging, and cashing multiple checks from Crowe during this time. Crowe did not discover the forgeries until she received a notice from the bank informing her that her checking account had been overdrawn. Jimmy Fields, Crowe's stepson and co-signer on the account, testified that the account balance on July 1, 2011 was $6,000 when the alleged forgeries began.

Upon discovering that the account had been overdrawn, Crowe spoke with Tracey Jock, Vice-President of Security at the Community National Bank in Corsicana, Texas. Jock recounted that Crowe was clearheaded and able to communicate with him about the incident. After reviewing copies of cashed checks from the account, Crowe identified numerous checks that had been forged. In particular, two of the checks Crowe identified were State's exhibits 1 and 2, a $150 check made payable to Newland and a $150 check made payable to appellant, respectively. Crowe denied knowing appellant and denied writing the checks to Newland and appellant. Nevertheless, the record reflects that appellant endorsed the check made payable to her.

After speaking with Jock, Crowe was directed to the Corsicana Police Department to file a report. In doing so, Crowe executed an affidavit of forgery, wherein she identified four checks, including the two checks listed above, that were forgeries. Despite the fact that Crowe identified only four checks as forgeries in the affidavit, Detective Mark Nanny with the Corsicana Police Department noted that

Crowe complained about forty-two different checks. Upon further questioning, Detective Nanny stated that thirty-six of the forty-two checks that Crowe complained about were made payable to Newland.

Regarding State's exhibit 2, Newland testified that he wrote appellant's name on the check and gave appellant the check to cash. Newland acknowledged that appellant was not present when he wrote the check from Crowe's account but that she was present "when I put her name on it." Newland also testified that appellant shared in the proceeds from the forged checks. In any event, Newland denied that appellant knew that he did not have permission to cash checks from Crowe's account. In fact, Newland testified that he had asked Crowe for money while in appellant's presence.

The testimony revealed that, on November 8, 2011, appellant passed another check that Crowe identified as forged by Newland. This check, described as State's exhibit 1, was a $150 check that Newland made payable to himself. Newland later pleaded guilty to forging this check. Surveillance videos from the bank showed appellant driving her vehicle to the bank's drive-through, taking the tube from the tower, and submitting forged checks for cashing. In another video, appellant is seen handing Newland a document which was then inserted in the tube and submitted to the bank. The video also showed Newland giving appellant the proceeds collected from the tube.

At the conclusion of the evidence, the jury found appellant guilty of the charged offense and sentenced her to ten years' incarceration in the Institutional Division of the Texas Department of Criminal Justice. The trial court subsequently suspended the

sentence and placed appellant on community supervision for a period of seven years. This appeal followed.

## II.  EXTRANEOUS-OFFENSE EVIDENCE

In her third issue, appellant contends that the trial court abused its discretion by admitting evidence of other checks forged by appellant during the time Newland and appellant were dating.  Appellant asserts that the probative value of this evidence is outweighed by the prejudicial effect.

Here, appellant filed a motion in limine, seeking to prevent discussion of her prior convictions and other extraneous acts in the presence of the jury.  The trial court conducted a hearing on appellant's motion in limine, wherein the parties focused on the admissibility of State's exhibits 1 and 2—the two forged checks mentioned above.  At the conclusion of the hearing, the trial court granted appellant's motion in limine, in part; State's exhibits 1 and 2 were deemed admissible, though the trial court agreed to issue a limiting instruction that the exhibits were admitted for the limited purpose to show intent, lack of mistake, and prior knowledge at the time the exhibits were tendered for admission into evidence.  At the trial, when the State tendered exhibits 1 and 2 for admission into evidence, appellant did not object.

To properly preserve error with regard to purported inadmissible extraneous-offense evidence, there must have been a timely request, objection, or motion stating the grounds for the ruling with sufficient specificity to make the trial court aware of the complaint and secure a ruling.  *See* TEX. R. APP. P. 33.1.  In fact, the Texas Court of Criminal Appeals has stated that "[f]or error to be preserved with regard to the subject

of a motion *in limine*, an objection must be made at the time the subject is raised during trial." *Fuller v. State*, 253 S.W.3d 220, 232 (Tex. Crim. App. 2008) (emphasis in original). Moreover, "[a] motion *in limine* . . . is a preliminary matter and normally preserves nothing for appellate review." *Id.* (citing *Gonzales v. State*, 685 S.W.2d 47, 50 (Tex. Crim. App. 1985)) (emphasis in original); *see Geuder v. State*, 115 S.W.3d 11, 14 (Tex. Crim. App. 2003) (stating that a pre-trial motion in limine does not preserve error; it is necessary that an objection be made at the time the subject is raised during the trial). Accordingly, because appellant did not object to the admission of State's exhibits 1 and 2 during trial, we cannot say that appellant preserved this issue for review. *See* TEX. R. APP. P. 33.1; *see also Fuller*, 253 S.W.3d at 232; *Geuder*, 115 S.W.3d at 14. As such, we overrule appellant's third issue.

### III.   DEFENSE COUNSEL'S CROSS-EXAMINATION OF NEWLAND

In her fifth issue, appellant complains that the trial court erred in denying her the opportunity to cross-examine Newland regarding whether he was authorized to write checks for Crowe and about Newland's motives for pleading guilty to forgery.

### A.   Standard of Review and Applicable Law

The Confrontational Clause of the Sixth Amendment to the United States Constitution provides that, "[i]n all criminal prosecutions, the accused shall enjoy the right . . . to be confronted with the witnesses against him." U.S. CONST. amend. VI. This procedural guarantee applies to both federal and state prosecutions. *Pointer v. Texas*, 380 U.S. 400, 403, 85 S. Ct. 1065, 1067-68, 13 L. Ed. 2d 923 (1965); *De La Paz v. State*, 273 S.W.3d 671, 680 (Tex. Crim. App. 2008). The Sixth Amendment protects the defendant's

right not only to confront the witnesses against him, but to cross-examine them as well. *See Davis v. Alaska*, 415 U.S. 308, 316, 94 S. Ct. 1105, 1110, 39 L. Ed. 2d 347 (1974). "The exposure of a witness' motivation in testifying is a proper and important function of the constitutionally protected right of cross-examination." *Davis*, 415 U.S. at 316-37, 94 S. Ct. at 1110. The accused is entitled to great latitude to show a witness' bias or motive to falsify his testimony. *See Hodge v. State*, 631 S.W.2d 754, 758 (Tex. Crim. App. [Panel Op.] 1982).

However, the right of cross-examination is not unlimited. The trial court retains wide latitude to impose reasonable limits on cross-examination. *See Delaware v. Van Arsdall*, 475 U.S. 673, 678, 106 S. Ct. 1431, 1434-35, 89 L. Ed. 2d 674 (1986). The trial court must carefully consider the probative value of the evidence and weigh it against the risks of admission. *See Hodge*, 631 S.W.2d at 758. These potential risks include "the possibility of undue prejudice, embarrassment or harassment to either a witness or a party, the possibility of misleading or confusing the jury, and the possibility of undue delay or waste of time." *Id.*; *see Lopez v. State*, 18 S.W.3d 220, 222 (Tex. Crim. App. 2000). Moreover, "the Confrontation Clause guarantees an opportunity for effective cross-examination, not cross-examination that is effective in whatever way, or to whatever extent, the defense might wish." *Delaware v. Fensterer*, 474 U.S. 15, 20, 106 S. Ct. 292, 294, 88 L. Ed. 2d 15 (1985) (emphasis in original); *see Walker v. State*, 300 S.W.3d 836, 844-45 (Tex. App.—Fort Worth 2009, pet. ref'd).

**B.** **Discussion**

With regard to the check underlying his conviction for forgery, Newland testified, on cross-examination, that he had permission from Crowe to write the check. The State objected to this testimony as an improper collateral attack on Newland's judgment of conviction for forgery—a charge to which Newland had pleaded guilty. The trial court sustained the State's objection, and defense counsel continued to question Newland about other aspects of the case.

In any event, after the State rested and outside the presence of the jury, defense counsel stated the following:

> Yes. The first issue, during the questioning of Robert Newland, I had asked him [a] question regarding State's Exhibit No. 1, which is a copy of the check that's in the indictment, that the State had shown Mr. Newland, and asked him if he plead [sic] guilty. I had approached Mr. Newland, I asked him whether or not he had permission for that check. And [sic] objection was made, the objection was sustained.
>
> I would like to put on the record in terms of a proffer versus—is acceptable—instead of calling Mr. Newland back. But what the evidence would have shown was that Mr. Newland would have said that he did, in fact, have permission for that check.
>
> . . . .
>
> That he'd been indicted which would eliminate or go to the issue of whether or not that's a forged check. And the—sustaining the objection, I was prohibited—or prevented from doing that. He also said that in the Pre-Trial Hearing yesterday, which was in the record.

On appeal, the State asserts that appellant did not preserve this issue for review. The Texas Court of Criminal Appeals has held that, when complaining about the exclusion of evidence, the proponent is required to make an offer of proof and obtain a

ruling in order to preserve error. *Reyna v. State*, 168 S.W.3d 173, 176 (Tex. Crim. App. 2005); *see Williams v. State*, 937 S.W.2d 479, 489 (Tex. Crim. App. 1996) (noting that, as a general rule, to preserve error in the exclusion of evidence, the proponent is required to make an offer of proof showing what the excluded testimony would have been and to obtain a ruling on whether such testimony is admissible); *see also* TEX. R. EVID. 103(a)(2). Moreover, "it is not enough to tell the judge that evidence is admissible." *Reyna*, 168 S.W.3d at 177. "The proponent, if he is the losing party on appeal, must have told the judge why the evidence was admissible." *Id.* This is particularly true when the basis for admitting evidence could be either under the Rules of Evidence or the Confrontation Clause, which involve different standards for admissibility and policy considerations. "When a defendant's objection encompasses complaints under both the Texas Rules of Evidence and the Confrontation Clause, the objection is not sufficiently specific to preserve error." *Id.* at 179.

Here, appellant never explained to the trial court why he believed the evidence was admissible, either under the Rules of Evidence or the Confrontation Clause. Because appellant "did not clearly articulate" that the Confrontation Clause demanded admission of the evidence, the trial court "never had the opportunity to rule upon" this rationale. *See id.* (citing *Clark v. State*, 881 S.W.2d 682, 694 (Tex. Crim. App. 1994)). "As the losing party, [appellant] must 'suffer on appeal the consequences of his insufficiently specific offer.'" *Id.* (quoting *Jones v. State*, 843 S.W.2d 487, 492 (Tex. Crim. App. 1992)); *see* TEX. R. APP. P. 33.1(a). We therefore conclude that appellant did not preserve this issue for review. We overrule appellant's fifth issue.

## IV. APPELLANT'S MOTION FOR MISTRIAL

In her fourth issue, appellant contends that the trial court erred in denying her motion for mistrial. Specifically, appellant complains that the prosecutor failed to abide by a motion in limine by offering testimony regarding appellant's drug use.

### A. Standard of Review

We review the denial of a motion for mistrial under an abuse-of-discretion standard. *Archie v. State*, 221 S.W.3d 695, 699-700 (Tex. Crim. App. 2007). Under this standard, we uphold the trial court's ruling as long as the ruling is within the zone of reasonable disagreement. *Id.* "'A mistrial is a device used to halt trial proceedings when error is so prejudicial that expenditure of further time and expense would be wasteful and futile.'" *Wood v. State*, 18 S.W.3d 642, 648 (Tex. Crim. App. 2000) (quoting *Ladd v. State*, 3 S.W.3d 547, 567 (Tex. Crim. App. 1999)). It is appropriate only for "a narrow class of highly prejudicial and incurable errors." *Id.*; *see Hawkins v. State*, 135 S.W.3d 72, 77 (Tex. Crim. App. 2004). Therefore, a trial court properly exercises its discretion to declare a mistrial when, due to the error, "an impartial verdict cannot be reached" or a conviction would have to be reversed on appeal due to "an obvious procedural error." *Wood*, 18 S.W.3d at 648 ("A mistrial is required only when the improper question is clearly prejudicial to the defendant and is of such character to suggest the impossibility of withdrawing the impression produced on the minds of the jurors."); *see Ladd*, 3 S.W.3d at 567.

### B. Discussion

On appeal, appellant asserts that Newland's comments about appellant's drug use were so inflammatory that an instruction to disregard was not enough. Appellant also argues that, despite the instruction to disregard, the prosecutor engaged in misconduct by asking follow-up questions that were allegedly designed to inflame the jury and elicit additional information about appellant's drug use.

Only in extreme circumstances, when the error is incurable, will a mistrial be required. *Hawkins v. State*, 135 S.W.3d 72, 77 (Tex. Crim. App. 2004). The asking of an improper question will seldom call for a mistrial because any harm can usually be cured by an instruction to disregard. *Wood*, 18 S.W.3d at 648. In fact, the Texas Court of Criminal Appeals has stated: "Ordinarily, a prompt instruction to disregard will cure error associated with an improper question and answer, even one regarding extraneous offenses." *Ovalle v. State*, 13 S.W.3d 774, 783 (Tex. Crim. App. 2000). A mistrial is required only when the improper question is clearly prejudicial to the defendant and is of such character as to suggest the impossibility of withdrawing the impression produced on the minds of jurors. *Wood*, 18 S.W.3d at 648.

Here, the prosecutor asked Newland about what he did with the proceeds from the forged checks. The purpose of the question was to demonstrate appellant's involvement in the scheme. When Newland volunteered that he purchased drugs with the proceeds of the forged checks, the prosecutor followed up with questions about whether Newland did drugs with appellant. At this point, appellant objected, arguing that the comments were highly prejudicial, irrelevant, and in violation of a pre-trial motion in limine. Appellant also moved for a mistrial. The trial court sustained

appellant's objection, immediately instructed the jury to disregard Newland's comment that he shared drugs with appellant, and denied appellant's motion for mistrial.

In any event, when the State later asked Newland whether he shared the proceeds from the forged checks with appellant, Newland commented: "I was buying drugs with it. That's about it. And I bought her items . . . ." At this point, defense counsel objected. The prosecutor responded that the question was "a yes/no question" and that "He [Newland] added superfluous at the end of it. I can't control that." The trial court noted that the question was acceptable but ordered Newland to just answer the questions asked of him. Defense counsel did not obtain a ruling on this objection, nor did he request a mistrial at this time.

Because defense counsel did not obtain ruling on his objection or move for a mistrial as to Newland's drug comments after the limiting instruction was issued, we cannot say that appellant preserved her complaints about those comments. *See Young v. State*, 137 S.W.3d 65, 69 (Tex. Crim. App. 2004) ("Because the objection, the request for an instruction to the jury, and the motion for mistrial seek judicial remedies of decreasing desirability for events of decreasing frequency, the traditional and preferred procedure for a party to voice its complaint has been to seek them in sequence—that is, (1) object when it is possible, (2) to request an instruction to disregard if the prejudicial event has occurred, and (3) to move for a mistrial if a party thinks an instruction to disregard was not sufficient. However, this sequence is not essential to preserve complaints for appellate review. The essential requirement is a timely, specific request that the trial court refuses."); *see also* TEX. R. APP. P. 33.1(a). Moreover, we believe that

the trial court's instruction to disregard cured any error associated with Newland's initial testimony and the State's questioning about appellant's drug use. *See Ovalle*, 13 S.W.3d at 783. As such, we cannot say that the trial court abused its discretion in denying appellant's motion for mistrial. *See Archie*, 221 S.W.3d at 699-700; *see also Wood*, 18 S.W.3d at 648. Accordingly, we overrule appellant's fourth issue.[1]

## V. SUFFICIENCY OF THE EVIDENCE

In her first issue, appellant contends that the evidence is insufficient to support her conviction for forgery by passing. We disagree.

## A. Standard of Review and Applicable Law

In *Lucio v. State*, 351 S.W.3d 878, 894 (Tex. Crim. App. 2011), the Texas Court of Criminal Appeals expressed our standard of review of a sufficiency issue as follows:

> In determining whether the evidence is legally sufficient to support a conviction, a reviewing court must consider all of the evidence in the light most favorable to the verdict and determine whether, based on that evidence and reasonable inferences therefrom, a rational fact finder could have found the essential elements of the crime beyond a reasonable doubt. *Jackson v. Virginia*, 443 U.S. 307, 318-19, 99 S. Ct. 2781, 61 L. Ed. 2d 560 (1979); *Hooper v. State*, 214 S.W.3d 9, 13 (Tex. Crim. App. 2007). This "familiar standard gives full play to the responsibility of the trier of fact fairly to resolve conflicts in the testimony, to weigh the evidence, and to draw reasonable inferences from basic facts to ultimate facts." *Jackson*, 443 U.S. at 319. "Each fact need not point directly and independently to the guilt of the appellant, as long as the cumulative force of all the

---

[1] Besides appellate counsel's speculation, we find no evidence in the record clearly demonstrating that the prosecutor in this case engaged in blatant prosecutorial misconduct. Based on our reading of the record, the prosecutor's questions after the instruction to disregard were designed to elicit information from Newland about whether appellant shared in the proceeds from the forged checks with the purpose of showing appellant's involvement in the scheme. A review of Newland's testimony shows that he often provided more information than was asked, and we do not find evidence in the record reflecting that the prosecutor "failed to instruct his witness" about the jury instruction to disregard testimony about appellant's drug use. Accordingly, we cannot say that the prosecutor engaged in misconduct, nor can we can we say that prosecutor's actions undermined the efficacy of the trial court's limiting instruction.

incriminating circumstances is sufficient to support the conviction." *Hooper*, 214 S.W.3d at 13.

*Id.*

Our review of "all of the evidence" includes evidence that was properly and improperly admitted. *Conner v. State*, 67 S.W.3d 192, 197 (Tex. Crim. App. 2001). And if the record supports conflicting inferences, we must presume that the factfinder resolved the conflicts in favor of the prosecution and therefore defer to that determination. *Jackson*, 443 U.S. at 326, 99 S. Ct. at 2793. Furthermore, direct and circumstantial evidence are treated equally: "Circumstantial evidence is as probative as direct evidence in establishing the guilt of an actor, and circumstantial evidence alone can be sufficient to establish guilt." *Hooper*, 214 S.W.3d at 13. Finally, it is well established that the factfinder is entitled to judge the credibility of the witnesses and can choose to believe all, some, or none of the testimony presented by the parties. *Chambers v. State*, 805 S.W.2d 459, 461 (Tex. Crim. App. 1991).

The sufficiency of the evidence is measured by reference to the elements of the offense as defined by a hypothetically correct jury charge for the case. *Malik v. State*, 953 S.W.2d 234, 240 (Tex. Crim. App. 1997). A hypothetically-correct jury charge does four things: (1) accurately sets out the law; (2) is authorized by the indictment; (3) does not unnecessarily increase the State's burden of proof or unnecessarily restrict the State's theories of liability; and (4) adequately describes the particular offense for which the defendant was tried. *Id.*

Here, the State was required to prove beyond a reasonable doubt that appellant forged a writing with intent to defraud or harm another. *See* TEX. PENAL CODE ANN. § 32.21(b). As limited by the indictment, "forge" means: "(A) to . . . make, complete, execute, or authenticate any writing so that it purports to be the act of another who did not authorize that act"; or "(B) to . . . transfer . . . [or] pass . . . a writing that is forged within the meaning of Paragraph (A)." *Id.* § 32.21(a)(1). Intent to defraud or harm another is a necessary element of the offense of forgery. *See id.* § 32.21(b); *see also Crittenden v. State*, 671 S.W.2d 527, 527 (Tex. Crim. App. 1984). Intent to defraud or harm may be inferred from proof the defendant knew the instrument was forged. *Williams v. State*, 688 S.W.2d 486, 488 (Tex. Crim. App. 1985); *Stuebgen v. State*, 547 S.W.2d 29, 32 (Tex. Crim. App. 1977). Intent to defraud or harm may be established by circumstantial evidence. *Williams*, 688 S.W.2d at 488.

## B.   Discussion

On appeal, appellant focuses this issue on the intent element of the charged offense. The record reflects that Newland was appellant's boyfriend for a little over a year during the relevant time in this case. Newland testified that he took multiple checks from Crowe without permission. In fact, Detective Nanny testified that Crowe identified forty-two checks taken by Newland. Ultimately, Newland pleaded guilty to forging a check from Crowe's account.

With regard to the check Newland stole from Crowe and made out to appellant, Newland stated that appellant was not in his presence when he made out the check; however, he admitted that appellant "was with me when I put her name on it."

Newland also acknowledged that he and appellant shared the proceeds from him cashing checks from Crowe's account. Additionally, Crowe testified that she did not know appellant, and in her affidavit of forgery, Crowe identified the check made out to appellant and the check appellant cashed for Newland as forged. Moreover, it is undisputed that appellant endorsed and cashed the check made out to her.

Furthermore, State's exhibit 5 includes several surveillance videos obtained from Community National Bank. These videos showed appellant driving her vehicle to the bank's drive-through, taking the tube from the tower, and submitting forged checks for cashing. In another video, appellant is seen handing Newland a document which was then inserted in the tube and submitted to the bank. The video also showed Newland giving appellant the proceeds collected from the tube. Based on the foregoing evidence, Detective Nanny testified that appellant was "a party to the offense."

In any event, Newland denied that appellant knew that he did not have permission to cash checks from Crowe's account. He also testified that he had asked Crowe for money while in appellant's presence. Given this testimony, appellant asserts that she was not aware that the checks were unauthorized.

As we stated earlier, it is within the province of the factfinder, the jury here, to judge the credibility of the witnesses. *See Chambers*, 805 S.W.2d at 461. This means that the jury was entitled to believe all, some, or none of the testimony presented by the parties. *See id.* And because it is within the province of the jury, we are to defer to the jury's resolution of conflicts in the evidence. *See Jackson*, 443 U.S. at 329, 99 S. Ct. at 2792-93; *see also Lancon v. State*, 253 S.W.3d 699, 706 (Tex. Crim. App. 2008); *Render v.*

*State*, 316 S.W.3d 846, 859 (Tex. App.—Dallas 2010, pet. ref'd) ("An appellate court must give deference to a jury's decision regarding what weight to give contradictory testimonial evidence because the decision is most likely based on an evaluation of credibility and demeanor, which the jury is in a better position to judge."). With its guilty verdict, the jury believed that the check made out to appellant was forged and that appellant was involved in the passing of the forged check. And based on the foregoing case law, we are to defer to the jury's resolution of the facts. *See Jackson*, 443 U.S. at 329, 99 S. Ct. at 2792-93; *see also Lancon*, 253 S.W.3d at 706; *Chambers*, 805 S.W.2d at 461; *Render*, 316 S.W.3d at 859.

Viewing the evidence in the light most favorable to the verdict, we conclude that a rational factfinder could have found the essential elements of the offense beyond a reasonable doubt. *See* TEX. PENAL CODE ANN. § 32.21(a)(1)(A)-(B); *see also Jackson*, 443 U.S. at 318-19, 99 S. Ct. at 2788-89; *Lucio*, 351 S.W.3d at 894; *Hooper*, 214 S.W.3d at 13. Thus, we conclude that the evidence supporting appellant's conviction is sufficient. *See Jackson*, 443 U.S. at 318-19, 99 S. Ct. at 2788-89; *Lucio*, 351 S.W.3d at 894; *Hooper*, 214 S.W.3d at 13. We overrule appellant's first issue.

## VI.     INEFFECTIVE ASSISTANCE OF COUNSEL

In her second issue, appellant asserts that her trial counsel was ineffective because he failed to: (1) object to the introduction of hearsay evidence, including Crowe's affidavit of forgery and Crowe's identification of the checks as forged to Detective Nanny and Jock; and (2) question Newland about State's exhibit 1.

## A.    Applicable Law

To prevail on a claim of ineffective assistance of counsel, an appellant must satisfy a two-prong test. *Strickland v. Washington*, 466 U.S. 668, 687, 104 S. Ct. 2052, 2064, 80 L. Ed. 2d 674 (1984); *Thompson v. State*, 9 S.W.3d 808, 812 (Tex. Crim. App. 1999). First, appellant must show that counsel was so deficient as to deprive appellant of his Sixth Amendment right to counsel.  *Strickland*, 466 U.S. at 687, 104 S. Ct. at 2064. Second, appellant must show that the deficient representation was prejudicial and resulted in an unfair trial.  *Id.*  To satisfy the first prong, appellant must show that his counsel's representation was objectively unreasonable.  *Id.*; *Lopez v. State*, 343 S.W.3d 137, 142 (Tex. Crim. App. 2011).  To satisfy the second prong, appellant must show that there is "a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different."  *Thompson*, 9 S.W.3d at 812.  A reasonable probability exists if it is enough to undermine the adversarial process and thus the outcome of the trial.  *See Strickland*, 466 U.S. at 694, 104 S. Ct. at 2068; *Mallett v. State*, 65 S.W.3d 59, 62-63 (Tex. Crim. App. 2001).  The appellate court looks to the totality of the representation and the particular circumstances of each case in evaluating the effectiveness of counsel.  *Thompson*, 9 S.W.3d at 813.  Our review is highly deferential and presumes that counsel's actions fell within a wide range of reasonable professional assistance.  *Mallett*, 65 S.W.3d at 63; *Thompson*, 9 S.W.3d at 813.

The right to "reasonably effective assistance of counsel" does not guarantee errorless counsel or counsel whose competency is judged by perfect hindsight.  *Saylor v. State*, 660 S.W.2d 822, 824 (Tex. Crim. App. 1983).  "Isolated instances in the record

reflecting errors of commission or omission do not cause counsel to become ineffective, nor can ineffective assistance of counsel be established by isolating or separating out one portion of the trial counsel's performance for examination." *Ex parte Welborn*, 875 S.W.2d 391, 393 (Tex. Crim. App. 1990). Appellant bears the burden of proving by a preponderance of the evidence that counsel was ineffective, and an allegation of ineffectiveness must be firmly founded in the record. *Thompson*, 9 S.W.3d at 813.

Trial court counsel should ordinarily be afforded an opportunity to explain his actions before being denounced as ineffective. *Rylander v. State*, 101 S.W.3d 107, 111 (Tex. Crim. App. 2003). Specifically, when the record is silent regarding the reasons for counsel's conduct, a finding that counsel was ineffective would require impermissible speculation by the appellate court. *Gamble v. State*, 916 S.W.2d 92, 93 (Tex. App.— Houston [1st Dist.] 1996, no pet.). Therefore, absent specific explanations for counsel's decisions, a record on direct appeal will rarely contain sufficient information to evaluate an ineffective assistance claim. *See Bone v. State*, 77 S.W.3d 828, 833 (Tex. Crim. App. 2002). To warrant reversal without affording counsel an opportunity to explain his actions, "the challenged conduct must be 'so outrageous that no competent attorney would have engaged in it.'" *Roberts v. State*, 220 S.W.3d 521, 533 (Tex. Crim. App. 2007).

**B.     Discussion**

Here, the record does not contain specific explanations for counsel's actions; therefore, under *Roberts*, we must examine counsel's actions to determine whether "the challenged conduct must be 'so outrageous that no competent attorney would have engaged in it.'" 220 S.W.3d at 533. Based on our review of the record, the evidence

about which appellant complains was admissible; therefore, no objection would have been successful. *See Mooney v. State*, 817 S.W.2d 693, 698 (Tex. Crim. App. 1991) (noting that counsel is not ineffective for failing to undertake futile actions); *see also Ex parte Chandler*, 192 S.W.3d 350, 356 (Tex. Crim. App. 2005) ("[A] reasonably competent counsel need not perform a useless or futile act[.]").

First, Crowe's affidavit of forgery was admissible as a prior inconsistent statement. *See* TEX. R. EVID. 801(e)(1)(A). At trial, Crowe was asked whether Newland had permission to write the check in question, and Crowe responded, "Lord, I don't know." The record reflects that Crowe was ninety-three years old at the time of trial and was hard of hearing. Nevertheless, Crowe's uncertain testimony at trial about whether Newland had permission to write the check in question was inconsistent with her affidavit of forgery, which has been executed several months prior to trial and shortly after discovering that the account had been overdrawn. Therefore, contrary to appellant's complaint on appeal, Crowe's affidavit of forgery is not hearsay and was admissible. *See id.*

Second, appellant complains about the testimony of Jock and Detective Nanny—in particular, Crowe's identification of the check in question as forged. An out-of-court statement offered into evidence to prove the truth of the matter asserted is hearsay. TEX. R. EVID. 801(d). A statement not offered to prove the truth of the matter asserted, but offered for some other reason, is not hearsay. *Guidry v. State*, 9 S.W.3d 133, 152 (Tex. Crim. App. 1999); *see Dinkins v. State*, 894 S.W.2d 330, 347 (Tex. Crim. App. 1995). The Texas Court of Criminal Appeals has concluded that if a statement is introduced to

explain how a defendant became a suspect or how the investigation focused on a defendant, then the statement is not hearsay because it is not offered for the truth of the matter asserted. *See Dinkins*, 894 S.W.2d at 347 (holding an appointment book and patient application were not offered for the truth of the matter asserted, but instead the evidence was offered to show how appellant became a suspect of the investigation); *see also Cano v. State*, 3 S.W.3d 99, 110 (Tex. App.—Corpus Christi 1999, pet. ref'd) (deciding that the testimony was not being offered to prove drugs were literally being distributed, but rather to show why the officers focused their investigation on appellants). "This type of testimony assists the jury's understanding of the events by providing context for the police officer's actions." *Cano*, 3 S.W.3d at 110.

A review of the record shows that this testimony was offered to explain the bank's procedures and how appellant became a suspect in the case. *See Dinkins*, 894 S.W.2d at 347; *see also Cano*, 3 S.W.3d at 110. We do not believe that the testimony was designed to elicit hearsay. Accordingly, without a record detailing counsel's trial strategy, we cannot say that trial counsel was ineffective for not objecting to this testimony.

Appellant also argues that trial counsel was ineffective for failing to elicit testimony from Newland regarding the reason appellant passed the forged check. At a pre-trial hearing, Newland testified to the following: "I wrote the check and I got in the car with her and I told her that I didn't have my driver's license because I didn't have them because I thought I left them at the bank the day before." Appellant argues that this was favorable testimony that trial counsel failed to elicit. However, Newland was

later asked whether the check was made out at the time he told appellant that he did not have his driver's license. To this question, Newland responded, "No, it was blank— I mean, it wasn't made out to nobody—it was blank." This testimony suggests that the check had been forged in appellant's presence. And as such, it was a reasonable trial strategy to not elicit these statements at trial, especially given that trial counsel argued that appellant did not know that the checks were forged. We therefore cannot say that trial counsel's action in failing to elicit testimony from Newland regarding the reason appellant passed the forged check was 'so outrageous that no competent attorney would have engaged in it.'" *Roberts*, 220 S.W.3d at 533.

Based on the foregoing, we conclude that appellant has not established the first prong of *Strickland*. *See* 466 U.S. at 687, 104 S. Ct. at 2064; *see also Lopez*, 343 S.W.3d at 142. Moreover, even if she had established the first prong of *Strickland*, we cannot say that appellant established "a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different," especially in light of our sufficiency discussion. *See Strickland*, 466 U.S. at 687, 104 S. Ct. at 2064; *see also Thompson*, 9 S.W.3d at 812. We therefore overrule appellant's second issue.

## VII. WHETHER APPELLANT RECEIVED A FAIR TRIAL

In her sixth issue, appellant argues that the cumulative effect of errors listed in her issues on appeal was to deny her a fair trial. "It is conceivable that a number of errors may be found harmful in their cumulative effect." *Chamberlain v. State*, 998 S.W.2d 230, 238 (Tex. Crim. App. 1999) (citing *Stahl v. State*, 749 S.W.2d 826, 832 (Tex.

Crim. App. 1988)). However, non-errors may not in their cumulative effect cause error. *See id.* In our analysis of appellant's issues, we did not conclude that there was error; therefore, we cannot conclude that appellant was harmed by the cumulative effect of a number of non-errors. Accordingly, we overrule appellant's sixth issue.

## VIII. CONCLUSION

Having overruled all of appellant's issues on appeal, we affirm the judgment of the trial court.


AL SCOGGINS
Justice


Before Chief Justice Gray,
        Justice Davis, and
        Justice Scoggins
Affirmed
Opinion delivered and filed January 16, 2014
Do not publish
[CR25]