

**NUMBER 13-18-00379-CR**

# COURT OF APPEALS

# THIRTEENTH DISTRICT OF TEXAS

# CORPUS CHRISTI – EDINBURG

RUDY GUARTUCHE,                                                    Appellant,

v.

THE STATE OF TEXAS,                                               Appellee.

### On appeal from the 94th District Court of Nueces County, Texas.

# MEMORANDUM OPINION

### Before Chief Justice Contreras and Justices Benavides and Longoria
### Memorandum Opinion by Justice Longoria

Appellant Rudy Guartuche appeals from his conviction of continuous sexual abuse of a child, a first-degree felony. *See* TEX. PENAL CODE ANN. § 21.02. By three issues, appellant argues that: (1) the trial court erred in admitting hearsay statements; (2) the trial court erred in admitting evidence of extraneous bad acts; and (3) the "emotional

outbursts" of the child's father during the punishment phase "interfered with the normal proceedings and the jury's verdict." We affirm.

## I.    BACKGROUND

Appellant was indicted for continuous sexual abuse of a child, T.C.,[1] between August 1, 2012 and June 1, 2014. *Id.* The State filed its "Notice of Intention to Use Child Abuse Victim's Hearsay Statement" and its "Outcry Notice." The State also filed a notice of intent to introduce extraneous offenses under Article 38.37 of the Texas Code of Criminal Procedure, indicating the State's intent to present evidence that Guartuche "touched the breast of [D.C.]" when she was a minor. *See* TEX. CODE CRIM. PROC. art. 38.37.

On January 26, 2017, Officer Mariah Lindsey of the Corpus Christi Police Department was dispatched to a home in response to a call for a "sexual assault not in progress." Officer Lindsey testified that when she arrived at the home, she first spoke with J.C., T.C.'s father. J.C. explained that he had called the police because T.C. was depressed and when he was talking with her, T.C. confessed that she had been touched by Guartuche, her mother's ex-boyfriend. Officer Lindsey sat down and talked with T.C. regarding her outcry, and T.C. told Officer Lindsey that when T.C. was between the ages of ten and twelve, Guartuche would touch her, have her touch his penis, have her perform oral sex on him, and he would ejaculate in her mouth. Officer Lindsey stated that while explaining what had happened to her, T.C. broke down and became hysterical, appearing to be ashamed. Officer Lindsey instructed J.C. to take T.C. to Driscoll Children's Hospital for an examination from a sexual assault nurse examiner.

---

[1] In order to protect the minor complainant's identity, we will use an alias for her and her family members throughout this memorandum opinion. *See* TEX. R. APP. P. 9.8.

Prior to the State calling D.C., T.C.'s older sister, the trial court held a hearing outside the presence of the jury to determine whether the evidence would be adequate to support a finding by the jury that the defendant committed the extraneous offense beyond a reasonable doubt. D.C. testified in the hearing that in 2013, when she was twelve years old, she woke up one evening and Guartuche was on top of her, her bra was undone, and her breasts were wet. Guartuche objected that the incident was not relevant, but the trial court determined her testimony was admissible. She relayed the same testimony to the jury. D.C. also stated that she immediately told her mother, C.S., of the touching, but that C.S. did not report the incident right away. Instead, C.S. reported the incident nearly two years later out of "revenge" when she and Guartuche were breaking up. After C.S. reported the incident, Child Protective Services (CPS) became involved and T.C., D.C., and their brother I.C., went to live with their father.

D.C. also testified that she, C.S., Guartuche, and T.C. would all smoke marijuana, take C.S.'s prescription Xanax, and drink alcohol. T.C. and D.C. were both minors during the time of the drug and alcohol use.

J.C. testified that he and C.S. had a difficult relationship. J.C. said that C.S. partied a lot, took drugs, and drank alcohol. Prior to the children living with him, they lived with C.S. and Guartuche. He testified that he always asked his children about their well-being and asked if they were being mistreated, and they denied any mistreatment. J.C. stated that when CPS first became involved, he was given temporary custody of his children, though at some point the children returned to live with their mother. Eventually, he gained full custody of his three children in April 2013.

3

J.C. said that T.C. appeared to be depressed and he was worried about her because he found that she had been cutting herself on her legs first, and then her arms. She had asked for help many times but would never talk about what was bothering her. He said that one evening, she had asked him for help again, and he asked her what was wrong, and this time she told him that Guartuche had touched her. He immediately called the police to make a report. After Officer Lindsey met with them, he took T.C. in for a sexual assault examination. T.C. was then admitted to Bayview Hospital because she was considered a danger to herself.

Julie Denny, a registered nurse with Driscoll Children's Hospital, conducted a sexual assault medical forensic examination of T.C. after her outcry. As part of the examination, Denny took a verbatim history from T.C. regarding her outcry allegations. The report was read to the jury and stated, in part, that: Guartuche made T.C. perform oral sex on him, he would ejaculate in her mouth, he touched her private area, which she indicated was her female sex organ, and that he attempted to have anal intercourse with her, but that he stopped because she said it hurt and he said that she "was too small." The report also indicated that Guartuche paid T.C. and that he would also encourage her to watch pornography. Denny conducted a physical examination of T.C. and there were no noted injuries or visible trauma. Denny stated that was not uncommon, especially when the outcry is years later.

T.C. also testified that when she was in elementary school, Guartuche followed her into the kitchen, cornered her by the stove, and pressed his body against hers as he kissed her. She ran upstairs but did not tell anyone what had happened. T.C. testified that after that incident, Guartuche began making her touch his penis and perform oral sex

4

on him approximately two to three times a week from third to fourth grade. She explained that she was afraid of what he would do if she told anyone about the abuse. T.C. also testified that Guartuche attempted to have anal intercourse with her. T.C. explained that she had many opportunities to tell someone what had happened, but that she kept it to herself. Because of the abuse, she said she did not feel good about herself, she was embarrassed, and ashamed. She also confirmed that she would smoke marijuana, take Xanax, and drink with D.C., C.S., and Guartuche.

Guartuche presented three witnesses in his defense: Crystal Marquez, Mercedes Aleman, and Michael Marquez. Crystal, Guartuche's cousin, testified that she spent a lot of time with C.S. and Guartuche at their apartment. Crystal knew all of the children and her children often played with them. She testified that she had seen drug use there before, but that Guartuche told C.S. to stop giving the children drugs, and she did not see it happen again. She said that she had never seen Guartuche act differently around the children. After Guartuche and C.S. broke up, Guartuche moved in with Crystal. Crystal testified that she did not worry about Guartuche near her children and she had him babysit her children at times.

Mercedes and Michael are Crystal's children. Mercedes testified that Guartuche moved in with them after he broke up with C.S. She testified that he never touched her while he lived with her. Michael testified that he spent a lot of time with C.S. and Guartuche, and often spent weeks at a time at their apartment. He said that he would also smoke marijuana with them. He has two daughters and does not worry about having Guartuche around them.

5

The jury convicted Guartuche and he was sentenced to life imprisonment. This appeal followed.

## II.    PRESERVATION OF ERROR

By his first issue, Guartuche argues that the trial court erred in admitting hearsay statements of T.C. "through Officer Lindsey, Julie Denny, and [J.C.] . . . ." The State contends that Guartuche failed to preserve error as to Officer Lindsey and Denny.

Error preservation is a threshold issue because challenges to the propriety of trial court rulings must be preserved for appeal. *Moore v. State*, 371 S.W.3d 221, 225 (Tex. Crim. App. 2012); *Mays v. State*, 285 S.W.3d 884, 889 (Tex. Crim. App. 2009) (holding that error preservation is a "systemic requirement"). Failure to present a timely and specific request, objection, or motion to the trial court for a ruling results in forfeiture of the right to present the claim on appeal. *See* TEX. R. APP. P. 33.1; *Mendez v. State*, 138 S.W.3d 334, 341–42 (Tex. Crim. App. 2004). The requirement that complaints be raised in the trial court (1) ensures that the trial court will have an opportunity to prevent or correct errors, thereby eliminating the need for a costly and time-consuming appeal and retrial; (2) guarantees that opposing counsel will have a fair opportunity to respond to complaints; and (3) promotes the orderly and effective presentation of the case to the trier of fact. *Gillenwaters v. State*, 205 S.W.3d 534, 537 (Tex. Crim. App. 2006); *Stinecipher v. State*, 438 S.W.3d 155, 159 (Tex. App.—Tyler 2014, no pet.).

### 1.    Officer Lindsey

When the State asked Officer Lindsey about the statements T.C. made to her regarding the sexual abuse allegations, Guartuche objected on hearsay grounds. The trial court held a bench conference in which the State argued that Officer Lindsey was

6

designated as on outcry witness. *See* TEX. CODE CRIM. PROC. ANN. art. 38.072. The State had designated four outcry witnesses but chose to use Officer Lindsey as the outcry witness at trial because she was the first person over the age of eighteen to whom T.C. described the alleged offense in a discernable manner. *See id*.; *Carty v. State*, 178 S.W.3d 297, 306 (Tex. App.—Houston [1st Dist.] 2005, pet. ref'd). The trial court allowed the testimony as an exception to the hearsay rule. *See* TEX. CODE CRIM. PROC. ANN. art. 38.072. Accordingly, Guartuche preserved appellate review of his hearsay objection to Officer Lindsey's testimony. *See Cordero v. State*, 444 S.W.3d 812, 818 (Tex. App.— Beaumont 2014, pet. ref'd) (citing *Long v. State*, 800 S.W.2d 545, 548 (Tex. Crim. App. 1990) (finding that a general "hearsay" objection by the defendant can be sufficient to inform the trial court of the defendant's complaint regarding testimony disclosing an outcry statement)).

### 2. Julie Denny

The State also presented testimony from Denny regarding the sexual assault physical examination she conducted on T.C. Guartuche did not object to any portion of Denny's testimony. Accordingly, Guartuche has not preserved error as to the admission of Denny's testimony on appeal. *See* TEX. R. APP. P. 33.1(a); *Moore*, 371 S.W.3d at 225. Guartuche's first issue, as it relates to the testimony of Denny, is overruled.

### III. OUTCRY WITNESS

Guartuche contends that the trial court erred by allowing the hearsay statements of T.C. to come in through both Officer Lindsey and J.C. as outcry witnesses.

### A. Standard of Review and Applicable Law

7

We review a trial court's designation of an outcry witness under an abuse of discretion standard. *See Garcia v. State*, 792 S.W.2d 88, 92 (Tex. Crim. App. 1990). A trial court abuses its discretion when its ruling is outside the zone of reasonable disagreement. *Zarco v. State*, 210 S.W.3d 816, 830 (Tex. App.—Houston [14th Dist.] 2006, no pet.). We will not disturb the trial court's ruling absent a clear abuse of discretion. *Id*. We will uphold a trial court's designation of an outcry witness if it is supported by the evidence. *Garcia*, 792 S.W.2d at 92.

The trial court has broad discretion to determine which of several witnesses is an outcry witness. *Chapman v. State*, 150 S.W.3d 809, 812–13 (Tex. App.—Houston [14th Dist.] 2004, pet. ref'd). The outcry witness must be the first person who is eighteen years or older "to whom the child makes a statement that in some discernible manner described the alleged offense" and provides more than "a general allusion that something in the area of child abuse was going on." *Garcia*, 792 S.W.2d at 92; *see* Tex. Code Crim. Proc. Ann. art. 38.072.

## A.    Discussion

Relying on *Thomas v. State*, Guartuche argues that J.C. was the only permissible outcry witness because J.C. was the first person over age eighteen to whom T.C. said that Guartuche touched her. *See Thomas v. State*, 1 S.W.3d 138, 141 (Tex. App.—Beaumont 1999, pet. ref'd). Guartuche argues that, under *Thomas*, the trial court cannot compare the statements given to the different individuals in order to determine who the proper outcry witness was. *Id*.

### 1.    Officer Lindsey

8

Here, as soon as J.C. found out that T.C. had been touched by Guartuche, he called the police. J.C. did not know the extent of the allegations as T.C. did not describe the alleged offense to him. Rather, once Officer Lindsey arrived, T.C. told Officer Lindsey specifically what had happened to her over the course of approximately two years. *See Brown v. State*, 381 S.W.3d 565, 571–72 (Tex. App.—Eastland 2012, no pet.) (rejecting defendant's contention that victim's mother was the only proper outcry witness and concluding that trial court did not abuse its discretion by allowing forensic interviewer to testify as outcry witness). The trial court did not err in allowing Officer Lindsey to testify as the first outcry witness to whom T.C. expressed, in a discernable manner, the alleged offense. *Id*.

**2. J.C.**

Guartuche argues that J.C. should not have been allowed to testify as to the hearsay statements of T.C. regarding the alleged abuse because the trial court found that Officer Lindsey was the outcry witness. The State elicited testimony from J.C. that T.C. told him that Guartuche had touched her and because of that, he called the police. Guartuche objected to the statements, arguing that they were hearsay and "covered" by the outcry testimony from Officer Lindsey.

An out-of-court statement offered into evidence to prove the truth of the matter asserted is hearsay. TEX. R. EVID. 801(d). Hence, a statement not offered to prove the truth of the matter asserted, but offered for some other reason, is not hearsay. *See Dinkins v. State*, 894 S.W.2d 330, 347 (Tex. Crim. App. 1995). The Texas Court of Criminal Appeals has concluded that if a statement is introduced to explain how a defendant became a suspect or how the investigation focused on a defendant, then the

9

statement is not hearsay because it is not offered for the truth of the matter asserted. *Id*. (holding an appointment book and patient application were not offered for the truth of the matter asserted, but instead the evidence was offered to show how the appellant became a suspect of the investigation). "This type of testimony assists the jury's understanding of the events by providing context for the police officer's actions." *Cano v. State*, 3 S.W.3d 99, 110 (Tex. App.—Corpus Christi 1999–Edinburg, pet. ref'd) (deciding that the testimony was not being offered to prove drugs were literally being distributed, but rather to show why the officers focused their investigation on the appellants); *see Nickerson v. State*, 312 S.W.3d 250, 262 (Tex. App.—Houston [14th Dist.] 2010, pet. ref'd).

Relying on *Dickens,* the State argues that J.C.'s statement was not hearsay, as it was not offered to prove the truth of the matter asserted, but rather was used "to explain how and why the [Guartuche] became the subject matter of the investigation." 894 S.W.2d at 347. Here, the trial court allowed the testimony to show why J.C. contacted the police. Because the State was not offering T.C.'s statement to J.C. that Guartuche touched her to prove the truth of the matter asserted, we hold the trial court correctly overruled appellant's objection on the basis that it was inadmissible hearsay. *See Cano*, 3 S.W.3d at 110. Additionally, even if the trial court had erred in admitting J.C.'s testimony of what T.C. told him, it is well-settled that the improper admission of evidence is rendered harmless when other evidence proving the same fact is properly admitted elsewhere or comes in elsewhere without objection. *Brooks v. State*, 990 S.W.2d 278, 287 (Tex. Crim. App. 1999). Here, the same evidence came in properly through multiple witnesses and therefore, if any error existed it would be rendered harmless. *Id*. Guartuche's first issue is overruled.

10

## IV.  EXTRANEOUS OFFENSE TESTIMONY

By his second issue, Guartuche argues that the trial court improperly allowed D.C. to testify as to an extraneous offense.  He further argues that the trial court erred in allowing the State to elicit testimony that he took drugs, drank alcohol, and "partied."

### A.  Testimony of D.C.

Guartuche argues that the extraneous offense testified to by D.C., specifically that D.C. touched her breasts while she was asleep, was not relevant and was improper testimony.  The State contends that D.C.'s testimony was admissible as an extraneous offense under Texas Code of Criminal Procedure Article 38.37.  *See* TEX. CODE CRIM. PROC. ANN. art. 38.37, § 2(b).

Generally, an extraneous offense is not admissible to prove a person's character in order to show the person acted in accordance with that character.  TEX. R. EVID. 404(b). However, Article 38.37 creates an exception to Rule 404(b) for certain cases, including continuous sexual abuse of a child.  *See* TEX. CODE CRIM. PROC. ANN. art. 38.37, § 2(a)(1)(B), (b); *Hitt v. State*, 53 S.W.3d 697, 705 (Tex. App.—Austin 2001, pet. ref'd). Under § 2 of Article 38.37, evidence that the defendant committed a separate offense may be admitted at trial *for any bearing it has on relevant matters*, including the defendant's character and acts performed in conformity with that character.  TEX. CODE CRIM. PROC. ANN. art. 38.37, § 2(a)(1)(B), (b) (emphasis added).  Article 38.37 § 2 supersedes Rule 404(b).  *Hitt*, 53 S.W.3d at 705; *see Carmichael v. State*, 505 S.W.3d 95, 102 (Tex. App.—San Antonio 2016, pet. ref'd).

Before such evidence is admitted, however, the defendant is protected by "numerous procedural safeguards."  *Harris v. State*, 475 S.W.3d 395, 402 (Tex. App.—

11

Houston [14th Dist.] 2015, pet. ref'd). First, the State must give the defendant thirty days' notice of its intent to introduce the evidence. TEX. CODE CRIM. PROC. ANN. art. 38.37, § 3. Second, the trial court must "conduct a hearing out of the jury's presence to determine that the evidence likely to be admitted will support a jury finding that the defendant committed the separate offense beyond a reasonable doubt." *Belcher v. State*, 474 S.W.3d 840, 847 (Tex. App.—Tyler 2015, no pet.). These procedural safeguards were satisfied here. *See Alvarez v. State*, 491 S.W.3d 362, 367 (Tex. App.—Houston [1st Dist.] 2016, pet. ref'd).

Guartuche does not argue that D.C.'s testimony does not fall within Article 38.37; in fact, his appellate brief does not mention Article 38.37 at all. His only objection was that the testimony was not relevant or "proper to prove custody." However, the State notified Guartuche of its intent to present D.C.'s testimony under Article 38.37, the trial court held a hearing to determine whether the jury could find beyond a reasonable doubt that the extraneous offense was committed, and the testimony falls squarely within the requirements of Article 38.37. *See* TEX. CODE CRIM. PROC. ANN. art. 38.37. Accordingly, the trial court did not err in admitting the testimony of D.C.

## B.     Testimony Relating to Drug and Alcohol Use

Guartuche generally argues that the testimony regarding his prior use of drugs and alcohol was improperly allowed by the trial court. Guartuche, however, allowed this testimony to come in without objection through multiple witnesses for the State, including D.C., J.C., and T.C. He also elicited testimony regarding drug and alcohol use from defense witnesses. Guartuche did not object when D.C. stated that she would "smoke, drink, do pills" with her mother and Guartuche, nor did he object when T.C. stated the

12

same. Guartuche similarly did not object when T.C. recounted an event in which she witnessed him "put lighter fluid on [her] mom and burn her." Failure to present a timely and specific request, objection, or motion to the trial court for a ruling results in forfeiture of the right to present the claim on appeal. *See* TEX. R. APP. P. 33.1. Guartuche has waived his right to present this argument on appeal for the first time. *See id*.

Guartuche's second issue is overruled.

## V. PUNISHMENT PHASE

By his third issue, Guartuche argues that J.C.'s "emotional outbursts" during the punishment phase of this trial "interfered with the normal proceedings and the jury's verdict." At the conclusion of J.C.'s testimony during the punishment phase, J.C. directed the following complained-of comments at Guartuche:

| | |
|---|---|
| [J.C.] | This, I ain't ever gonna forget this, man. [T.C] ain't never gonna be over this. What you did to her you scarred her for life, dude, more than scarred her, more than scarred her, dude. |
| [State] | Pass the witness. |
| [J.C.] | And what you did to me *tambien*, is that you didn't only hurt me– |
| [Defense Counsel] | No questions. |
| [The Court] | Okay. |
| [J.C.] | –you hurt [T.C]. You hurt [D.C.], your family, your kids. You hurt your own family, too, dude. Now they got to see you locked up for the rest of their lives, man. Tell the truth, dude, tell the truth. Be honest. Be honest to your family, at least your family, dude. You don't need to say sorry to me. Be honest to them, that all this is what you did is your decisions, what you—what you wanted to do to her, dude. |
| [The Court] | Okay. |

13

| | |
|---|---|
| [J.C.] | Because that–that gave you pleasure touching a little girl like that, man. You didn't even touch her, you raped her, you raped her, dude. |
| [The Court] | Okay. |
| [J.C.] | You raped her. |
| [The Court] | Okay. All right, [J.C.] – |
| [J.C.] | Every day you were doing that to her, man. |
| [The Court] | All right, J.C., you may stand down. |
| [J.C.] | Every day, dude. And I want your life, dude, and I hope they give you life. |
| [The Court] | Just go that way. |
| [J.C.] | I wanted your life, dude, I wanted your life. I want your life, dude. If it wasn't in the casket, I wanted life, prison time, dude, and they're waiting for you over there. |

## A.    Preservation of Error

The State concedes that J.C. "was inappropriate in his unsolicited emotional outbursts and attack on Guartuche at the punishment phase of trial." However, Guartuche did not raise an objection, request an instruction to disregard, nor did he file a motion for a mistrial.

> [T]he request for an instruction that the jury disregard an objectionable occurrence is essential only when such an instruction could have had the desired effect, which is to enable the continuation of the trial by an impartial jury. The party who fails to request an instruction to disregard will have forfeited appellate review of that class of events that could have been "cured" by such an instruction. But if an instruction could not have had such an effect, the only suitable remedy is a mistrial, and a motion for a mistrial is the only *essential prerequisite* to presenting the complaint on appeal. Faced with incurable harm, a defendant is entitled to a mistrial and if denied one, will prevail on appeal.

14

*Young v. State*, 137 S.W.3d 65, 70 (Tex. Crim. App. 2004) (emphasis added).  Here, Guartuche did not preserve error on appeal because he failed to request an instruction or file a motion for mistrial.  TEX. R. APP. P. 33.1; *see Young*, 137 S.W.3d at 70; *see also Sparks v. State*, No. AP-76,099, 2010 WL 4132769, at *20 (Tex. Crim. App. Oct. 20, 2010) (not designated for publication).  Guartuche's third issue is overruled.

## VI. CONCLUSION

The judgment of the trial court is affirmed.

NORA L. LONGORIA
Justice

Do not publish.
TEX. R. APP. P. 47.2(b).

Delivered and filed the
15th day of August, 2019.